Filed 11/21/14  Slayton v. Ruscha CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROBERT SLAYTON et al., | B251188 |
| Plaintiffs, Cross-defendants and Appellants, | (Los Angeles County Super. Ct. No. SC112047) |
| v. | |
| EDWARD RUSCHA, | |
| Defendant, Cross-complainant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Gerald Rosenberg, Judge.  Affirmed.

Monteleone & McCrory, Patrick J. Duffy III and William R. Baerg for Defendant, Cross-complainant and Appellant.

Dykema Gossett, Jeffrey G. Huron and Lukas Sosnicki for Plaintiffs, Cross-defendants and Appellants.

_____

Plaintiffs Robert Slayton and Cal Realty Holdings (collectively Slayton) and defendant Edward Ruscha appeal from an order awarding $125,000 in attorney fees and costs to Slayton following a jury trial. Ruscha maintains the trial court erred in determining Slayton was both the prevailing party and obtained a more favorable judgment than Ruscha's Code of Civil Procedure section 998 settlement offer. Both parties contend the $125,000 fee award was unreasonable. We affirm.

### Facts and Procedural Background

Ruscha leased commercial space for an art studio from Slayton for approximately 25 years, promising among other things to keep and ultimately surrender the premises in a condition of good repair. Ruscha vacated the premise at the end of the lease term but failed to pay several months' rent or repair substantial damage that had occurred over the course of the leasehold. Slayton sued Ruscha for breach of contract and waste, seeking unpaid rent and $635,038 in damages. Ruscha cross-complained for breach of contract, seeking the return of his $30,000 security deposit.

On December 21, 2011, Ruscha paid Slayton $86,004.51 in satisfaction of the unpaid rent claim.

On June 12, 2012, Ruscha, under Code of Civil Procedure section 998, offered to pay Slayton $100,000 and dismiss the cross-complaint as "satisfaction of all claims for damages, costs, expenses, attorney's fees, interest and penalties."[1] Slayton, who by then had incurred $109,985 in attorney fees and costs, rejected the offer. Two months later, Slayton made a section 998 offer to dismiss his complaint in return for $345,000, each party to bear its own attorney fees and costs and Ruscha to dismiss his cross-complaint. Ruscha rejected the offer and the case proceeded to trial.

At trial, Slayton contended Ruscha failed to maintain the premises and caused property damage well beyond ordinary wear and tear. Ruscha contended no notable damage had occurred, and he was entitled to the return of his security deposit. Prior to

---

[1] Undesignated statutory references will be to the Code of Civil Procedure.

2

closing argument, the trial court, Judge John H. Reid presiding, granted Ruscha's motion for nonsuit on Slayton's cause of action for waste.

By general verdict, the jury found that Ruscha "failed to do something that the contract required him to do." It awarded Slayton $30,000 in contractual damages and denied Ruscha's claim for the return of his $30,000 security deposit.

After the verdict, Slayton and Ruscha both filed motions for attorney fees and costs, and Ruscha filed a motion to tax Slayton's costs. Slayton contended he was the prevailing party, which the lease defined as any party "who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party . . . of its claim or defense."[2] He also contended he obtained a better result at trial than had been proposed in his section 998 settlement offer, and was therefore entitled to cost shifting, and that he was entitled to costs of proof because during discovery Ruscha had failed to admit the truth of several material and indisputable matters. (§ 2033.420, subd. (a) [party that fails upon request to admit the truth of a matter later proven at trial may be required to reimburse the other party for costs of proof].) Slayton requested $387,346.23.

Ruscha contended he was the prevailing party because Slayton's cause of action for waste was nonsuited and Slayton ultimately received only a fraction of what he had sought.

Judge Reid retired before the motions came on calendar, and they were heard by Judge Gerald Rosenberg. Judge Rosenberg found Slayton was the prevailing party, as he

---

[2] The lease provision provided in relevant part: "If any Party or Broker brings an action or proceeding involving the Premises to enforce the terms hereof or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorney's fees. . . . The term, "Prevailing Party" shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorney's fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimbursed all attorney's fees reasonably incurred."

3

had prevailed on his unpaid rent and damages claims and on Ruscha's cross-complaint for return of the security deposit. The court found Ruscha was not entitled to cost-shifting because Slayton's affirmative $30,000 recovery plus the $109,985 in attorney's fees he incurred before Ruscha's section 998 offer was more than the $100,000 Ruscha had offered to pay in settlement. After reviewing Slayton's attorneys' billing documents and weighing the result of the litigation, the court awarded Slayton attorney fees in the amount of $125,000 and costs in the amount of $22,479.

The court also found Slayton was not entitled to cost-shifting under section 998 because he ultimately received less than the $345,000 he offered to accept in settlement, and it denied his motion for costs of proof, finding the jury's award of only a fraction of what Slayton sought established that Ruscha reasonably denied Slayton's pretrial requests for admissions.

Both parties timely appealed the resulting judgment.

## Discussion

### 1.     Legal Principles

Section 1032 permits an award of costs to a prevailing party. (§ 1032, subd. (b).) Section 1033.5 specifies the items allowable as costs, including attorney fees when authorized by contract. (§ 1033.5, subd. (a)(10)(A).) Civil Code section 1717 provides that when attorney fees are authorized by contract, they shall be awarded to the prevailing party. (Civ. Code, § 1717, subd. (a).)

Although these general rules entitle a prevailing party to recover its costs, section 998 "'establishes a procedure for shifting the costs upon a party's refusal to settle. If the party who prevailed at trial obtained a judgment less favorable than a pretrial settlement offer submitted by the other party, then the prevailing party may not recover its own postoffer costs and, moreover, must pay its opponent's postoffer costs, including, potentially, expert witness costs. (§ 998, subd. (c)(1).)' [Citations.]" (*Westamerica Bank v. MBG Industries, Inc.* (2007) 158 Cal.App.4th 109, 128.) With these principles in mind, we turn to the parties' contentions.

## 2. Prevailing Party under Civil Code Section 1717

Ruscha argues the trial court erred in determining that Slayton was the prevailing party under Civil Code section 1717. We disagree.

In an action on a contract, Civil Code section 1717 permits an award of reasonable attorney fees to the prevailing party where the contract specifically provides for them. Civil Code section 1717 defines "prevailing party" as "the party who recovered the greater relief in the action on the contract." (Civ. Code, § 1717, subd. (b)(1).)

"When a party obtains a simple, unqualified victory by completely prevailing on or defeating all contract claims in the action and the contract contains a provision for attorney fees, [Civil Code] section 1717 entitles the successful party to recover reasonable attorney fees incurred in prosecution or defense of those claims" as a matter of right. (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109.) But "if neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." (*Ibid.*; Civ. Code, § 1717, subd. (b)(1).)

"[I]n deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.'" (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876.) "[I]n *determining litigation success*, courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.'" (*Id.* at p. 877.) That a party recovered "less than the amount he prayed for does not make his adversary the prevailing party within the meaning of Civil Code section 1717." (*Buck v. Barb* (1983) 147 Cal.App.3d 920, 926.) "A trial court has wide discretion in determining which party is the prevailing party under [Civil Code] section 1717, and we will not disturb the trial court's

determination absent 'a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence.'" (*Silver Creek, LLC v. BlackRock Realty Advisors, Inc.* (2009) 173 Cal.App.4th 1533, 1539.)

Here, Slayton sought to prove $635,000 in contract damages on the theory that Ruscha failed to maintain the premises and caused property damage beyond ordinary wear and tear allowable under the lease. Ruscha maintained there was no damage beyond ordinary wear and tear, and he was therefore entitled to the return of his $30,000 security deposit. Slayton established only $60,000 in damages, and was therefore not automatically a prevailing party on the contract for purposes of Civil Code section 1717. Whether this was enough to justify an award of attorney fees was a matter within the discretion of the trial court to determine. Because Slayton proved the fact of substantial damage to the premises, a fact Ruscha flatly denied, the court was within its discretion to conclude that on balance, Slayton prevailed for purposes of Civil Code section 1717. (See *Scott Co. v. Blount*, *supra*, 20 Cal.4th at p. 1109 [plaintiff that proved only 25 percent of the damages it sought could be found to be the prevailing party].)

Ruscha argues he was the prevailing party as a matter of law because he obtained the greater relief: He achieved 90 percent of his litigation objectives by avoiding 90 percent of the damages Slayton sought. We disagree.

Although Civil Code section 1717 expressly contemplates a comparison of litigation results—by defining "prevailing party" as the party obtaining "a greater relief"—no meaningful comparison is accomplished simply by relativizing a party's demand and recovery and comparing the resulting "percentage of success" with the opposing party's complementary percentage. Not only would a plaintiff who recovered only 49 percent of its demand never be the prevailing party when compared to the defendant's 51 percent "victory," the demand itself is an infirm basis upon which to measure litigation success. (See *de la Cuesta v. Benham* (2011) 193 Cal.App.4th 1287, 1295 ["the reality of litigation, almost universally recognized[, is that a]ttorneys tend to err on the side of overstating the extent of the claims being presented on their client's behalves"].) To measure litigation success using a plaintiff's demand as the yardstick

would exalt form over substance and ignore equitable considerations, contrary to our Supreme Court's instruction. (*Hsu v. Abbara*, *supra*, 9 Cal.4th at p. 877.) Here, the substance of the matter is that Ruscha was in fact liable under contract for tens of thousands of dollars in property damage and suffered final judgment to that effect.

In *de la Cuesta v. Benham*, *supra*, 193 Cal.App.4th 1287 (*de la Cuesta*), a landlord brought an unlawful detainer action against a tenant and sought $103,000 in unpaid rent. The tenant asserted she owed the landlord nothing because leaks on the premises breached the covenant of habitability. The day before trial, the tenant vacated the premises. The trial court awarded the landlord almost $70,000 in unpaid rent and determined no prevailing party existed for purposes of awarding attorney fees. (*Id.* at p. 1291.) The appellate court reversed, concluding the trial court abused its discretion in determining the landlord was not the prevailing party. (*Id.* at p. 1299.) The court noted the landlord obtained 70 percent of the damages he sought while the tenant obtained 0 percent because she ended up with a judgment of $70,000 against her although she asserted she owed nothing, her fraud claims were rejected, and she vacated the premises the day before trial, which "in equitable terms, was a clear victory for the landlord." (*Id.* at pp. 1295-1297.)

Like the landlord in *de la Cuesta*, Slayton obtained a jury finding that Ruscha breached the lease and recovered damages. In contrast, Ruscha achieved none of his affirmative litigation objectives, as he was found to have breached the lease, owed Slayton $30,000 in damages although he claimed he owed nothing, and was not entitled to the return of his $30,000 security deposit. Thus, Slayton substantially achieved his litigation objectives while Ruscha did not. (*Karton v. Dougherty* (Nov. 14, 2014, B244231) ___ Cal.App.4th ___ [2004 Cal.App. Lexis 1036] [party that obtains no relief on contract claim "cannot be the prevailing party on the contract"].)

Even considering the nonsuit of Slayton's cause of action for waste, Slayton still substantially obtained the relief he sought. In *Ajaxo Inc. v. E*Trade Group, Inc.* (2005) 135 Cal.App.4th 21, Ajaxo sued E*Trade for breach of a nondisclosure agreement, seeking $19.2 million in damages and an injunction. (*Id.* at pp. 40-41, fn. 35.) The jury

found E\*Trade breached the agreement and awarded $1.29 million in damages to Ajaxo, but the trial court denied Ajaxo's claim for injunctive relief. (*Id.* at pp. 40-41.) The trial court awarded attorney fees to Ajaxo as the prevailing party and the appellate court affirmed, holding Ajaxo was the prevailing party even though it recovered only a fraction of the damages it sought and its claim for an injunction had been denied. "While this may have been far short of the damages Ajaxo initially sought, Ajaxo won a simple, unqualified verdict on the breach of contract claim and established monetary damages in excess of $1 million. Ergo, it was the 'prevailing party on the contract'-- that is, the party who recovered the greater relief in the action on the contract." (*Id.* at pp. 58-59.) Similarly here, although Slayton failed to prevail on his cause of action for waste or obtain the amount of damages he sought, he was nevertheless the prevailing party on the contract because the jury found Ruscha breached the lease and awarded Slayton $60,000 in damages. We therefore conclude the trial court did not abuse its discretion in determining Slayton was the prevailing party.

### 3.    Ruscha's Code of Civil Procedure Section 998 Offer

Ruscha argues Slayton is not entitled to his attorney fees and costs because he failed to obtain a more favorable judgment than Ruscha's section 998 offer for $130,000 ($100,000 plus dismissal of his claim for the $30,000 security deposit). This argument is without merit.

Section 998 provides that "[n]ot less than 10 days prior to commencement of trial . . . any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time. . . . [¶] . . . If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly." (§ 998, subd. (b), (b)(1).) However, "[i]f an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer." (§ 998, subd. (c)(1).) When the defendant's section 998 offer includes costs, "the plaintiff's *preoffer* costs [including attorney fees when authorized by contract,] are

8

included in deciding whether the 'judgment' is more favorable than the offer; *postoffer* costs are excluded." (*Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co.* (1999) 73 Cal.App.4th 324, 330-331.) We review the trial court's determination of whether an offeree obtained a more favorable judgment for an abuse of discretion. (*Linthicum v. Butterfield* (2009) Cal.App.4th 259, 271.)

"Code of Civil Procedure section 998 is a cost-shifting statute which encourages the settlement of actions, by penalizing parties who fail to accept reasonable pretrial settlement offers. A plaintiff who refuses a reasonable pretrial settlement offer and subsequently fails to obtain a 'more favorable judgment' is penalized by a loss of prevailing party costs and an award of costs in the defendant's favor." (*Heritage Engineering Construction, Inc. v. City of Industry* (1998) 65 Cal.App.4th 1435, 1439; see *Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co.*, *supra*, 73 Cal.App.4th at p. 330 ["The purpose of section 998 is to 'encourage settlement by providing a strong financial disincentive to a party—whether it be a plaintiff or a defendant—who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer'"].)

Here, Ruscha offered $100,000 and dismissal of his cross-claim in return for "satisfaction of all claims for damages, costs, expenses, attorney's fees, interest and penalties." Slayton declined the offer. As of the time of the offer, Slayton had incurred $109,985 in attorney fees and costs. He then obtained a net $60,000 judgment. The judgment and preoffer costs exceeded Ruscha's $130,000 offer. Therefore, the cost-shifting provision of section 998, subdivision (c)(1) does not apply.

Ruscha suggests that in determining the amount of preoffer costs we should reduce Slayton's preoffer attorney fees by one-third, just as the trial court reduced Slayton's request for attorney fees by one-third in determining Slayton's reasonable attorney fees. But doing so would misconstrue the purpose of section 998. At the time of the offer, Slayton had incurred over $100,000 in attorney fees and costs and had no reason to know the trial court would reduce his ultimate fee request by one-third. Thus, at the time of

9

Ruscha's $130,000 offer, which included attorney fees, it was reasonable for Slayton to reject the offer under the belief he could obtain greater relief through trial.

**4.      Slayton's Code of Civil Procedure Section 998 Offer**

Slayton argues he is entitled to his postoffer expert witness fees under section 998 because Ruscha failed to obtain a more favorable judgment than Slayton's settlement offer.  We disagree.

"If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment" the trial court in its discretion may require the defendant to pay the plaintiff's reasonable postoffer expert witness costs.  (§ 998, subd. (d).)  To determine whether a defendant fails to obtain a more favorable judgment than a section 998, subdivision (d) settlement offer *that includes costs*, "the amount of the judgment is deemed to be the amount of the damages plus the amount of costs allowed under section 1033.5, subdivision (a)."  (*Wickware v. Tanner* (1997) 53 Cal.App.4th 570, 575.)

Slayton made a statutory settlement offer of $345,000, which included a provision that each party would bear its own attorney fees and costs and required that Ruscha dismiss his cross-complaint for $30,000.  Slayton received a net verdict of only $60,000, plus $125,000 in attorney fees and costs, much less than his offer.  He was therefore not entitled to postoffer expert witness fees.

**5.      Reasonable Attorney Fees**

Both Ruscha and Slayton challenge the amount of attorney fees awarded to Slayton as unreasonable.  Neither challenge is meritorious.

Under Civil Code section 1717, the trial court has broad authority to determine the amount of reasonable attorney fees.  (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)  We review a trial court's determination of reasonable attorney fees under the abuse of discretion standard.  (*Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 25.)  Ruscha suggests our review should be de novo because the judge who presided over the costs hearing had not presided over the trial, leaving us equally as capable as the trial court to assess the reasonableness of an attorney fees award.  We disagree.  It is well established "that the '"experienced trial judge is the best judge of the

10

value of professional services rendered in his court . . . .""" (*Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 64.) Even if he or she did not preside over the trial, a trial judge has a unique familiarity with the value of services in the community and the skill and time commitments necessary to litigate specific types of cases. Thus, "while [the trial judge's] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." (*Ibid.*)

"In so-called fee shifting cases, in which the responsibility to pay attorney fees is statutorily or otherwise transferred from the prevailing plaintiff or class to the defendant, the primary method for establishing the amount of 'reasonable' attorney fees is the lodestar method. The lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." (*Lealao v. Beneficial California, Inc.*, *supra*, 82 Cal.App.4th at p. 26.) Once the trial court has fixed the lodestar, "it shall consider whether the total award so calculated under all the circumstances of the case is more than a reasonable amount and, if so, shall reduce the [Civil Code] section 1717 award so it is a reasonable figure." (*Sternwest Corp. v. Ash* (1986) 183 Cal.App.3d 74, 77.) The lodestar may be adjusted at the discretion of the trial court "after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623-624.)

Here, Slayton requested $364,766.80 in attorney fees, supporting the request with a declaration from its counsel and billing records indicating its attorneys and paralegals spent over 1,400 hours litigating the matter. The trial court awarded $125,000. In its minute order, the court stated: "The Court has reviewed the file, the billing statements of the Plaintiff's counsel, the Declarations in Support and in Opposition to the Motion for Attorney's Fees. In addition, the Court has weighed the result of the litigation. [¶] The Court determines that Plaintiff's counsel is entitled to attorney's fees in the sum of $125,000 as [a] reasonable fee for the work performed to prosecute the Amended Complaint and to defend against the Cross Complaint."

11

Slayton argues the trial court's refusal to award the full amount Slayton requested constituted an arbitrary departure from the lodestar method that was unsupported by the record. We disagree.

The trial court reviewed Slayton's counsel's billing records, weighed the result of the litigation, and concluded counsel was entitled to fees amounting to roughly twice Slayton's recovery. In doing so, the court implicitly found the case was over litigated. It had broad authority to make such a finding, and we are in no position to question it absent some showing by Slayton that the finding was so unreasonable as to be arbitrary.

Slayton makes no such showing, but merely argues the trial court's refusal to accept its calculation—hours worked multiplied by pertinent hourly rates—constituted a departure from the lodestar method. It did not. A lodestar is produced by multiplying the number of hours *reasonably* expended by counsel by a reasonable hourly rate. The trial court did not depart from this method, it merely found the number of hours Slayton's attorneys expended in this case to be unreasonable. It was Slayton's burden on appeal to show this finding was arbitrary. Slayton makes no attempt to do so. Thus, we cannot conclude the trial court was clearly wrong in awarding Slayton only $125,000 in attorney fees.

## 6. Costs of Proof

Slayton argues the trial court erred in denying him attorney fees and costs associated with proving the truth of matters denied by Ruscha in response to Slayton's requests for admission. Section 2033.420 provides that "[i]f a party fails to admit . . . the truth of any matter when requested to do so . . . and if the party requesting that admission thereafter proves . . . the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees." Because we conclude Slayton was awarded reasonable attorney fees and costs, this issue is moot.

12

**Disposition**

The judgment is affirmed.  Each party is to bear its own costs on appeal.

NOT TO BE PUBLISHED.


CHANEY, J.


We concur:


ROTHSCHILD, P. J.


MILLER, J. [*]

_____

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13