Filed 7/14/25  McNiven v. Dreyfus CA1/3
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| CAROLYN McNIVEN et al., as Trustees, etc., <br><br> Plaintiffs, Cross-defendants and Respondents; <br> ANDREW SOHN, <br><br> Cross-defendant and Respondent, <br> v. <br> KAREN DREYFUS et al., <br><br> Defendants, Cross-complainants and Appellants. | A169807 <br><br> (Alameda County <br> Super. Ct. No. RG18918709) |

After extensive litigation over the validity of a restrictive covenant, the trial court ordered Karen and Michael Dreyfus (the Dreyfuses) to pay Carolyn McNiven, Marion McNiven, and Andrew Sohn $927,249.19 in prevailing party attorney fees under Civil Code section 1717 (undesignated statutory references are to this code).  The Dreyfuses appeal, arguing the court erred in its prevailing party determination and that the covenant did not authorize an attorney fee award under the facts of this case.  We affirm.

1

# BACKGROUND[1]

In 2016, the Dreyfuses purchased a home next door to the McNivens. The homes share a common rear patio, stairway, lawn, and yard (collectively, the shared yard). They also share a common garage that straddles the property line. Two in-law units — one belonging to each family — sit atop the garage, and the Dreyfuses' in-law unit encroaches onto the McNivens' property.

In 2015, the McNivens and the prior owner of the Dreyfuses' home entered into a restrictive covenant to "preserve the character and features" of the shared yard "that exist as of the date of this Agreement." It also contemplated preserving the floor plan of what would become the Dreyfuses' in-law unit. The covenant runs with the land so long as the signees or their heirs or blood relatives own and occupy one of the homes. Its enforcement clause provides, in "the event that there is a breach or violation" of the covenant, the "non-breaching party shall be entitled to enforce" it in "law or in equity" against anyone "violating or attempting to violate any covenant by either restraining such violation or by the recovery of damages or both." Remedies "shall" include "injunctive relief," "together with any other remedy, including monetary damages and the recovery of reasonable attorneys' fees and costs."

After purchasing their home, the Dreyfuses obtained a building permit that included changes to the shared yard. The permit authorized the removal of an existing staircase joining the two properties, constructing an elevated patio with a staircase into the shared yard, and building a dividing wall in

---

[1] We take judicial notice of the record in *McNiven v. City of Berkeley et al.* (Nov. 19, 2024, A169867 [nonpub. opn.]). (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

the shared yard. Later, the Dreyfuses and their architect acknowledged their plans violated the covenant, and the Dreyfuses acknowledged they intended to follow through on those plans.

In August 2018 — one month after the Dreyfuses obtained their permit — the McNivens sued. They alleged the Dreyfuses breached the covenant and sought preliminary and permanent injunctive relief, including enforcement of the covenant as an equitable servitude. They also sought to quiet title as to the encroached-upon in-law unit, declaratory relief stating the Dreyfuses' plans breached the covenant, and to revoke permission for use of the encroachment. The Dreyfuses opposed the sought relief and countersued the McNivens and Sohn (hereafter, the McNivens), alleging the McNivens financially abused the elderly former owner of the Dreyfuses' home by entering into the covenant and thus slandered title. The Dreyfuses sought declaratory relief stating the covenant was void and that their in-law unit did not encroach on the McNivens' property, a prescriptive or equitable easement to use the encroached-upon property, and an order quieting title.

In May 2019, the trial court issued a preliminary injunction preventing construction in violation of the covenant and found the Dreyfuses' plans would "clearly violate" it. It also found the McNivens were likely to succeed on the merits. In June, it sustained the McNivens' demurrer to the Dreyfuses' financial elder abuse claim. In November 2021, the court set "the validity of the Restrictive Covenant" and "the existence of any equitable servitudes" for trial and reserved on all remaining issues.

In October 2022 — after a nine-day trial — the trial court concluded that the covenant was enforceable by its own terms or as an equitable servitude, and that it ran with the land. It rejected the Dreyfuses' contentions that "the McNivens took unfair advantage of [the Dreyfuses'

3

home's former owner's] diminished mental capacity and weakened physical condition," and that the covenant "is not enforceable . . . because it does not comply with the formalities required for a covenant to run with the land." Because it found the covenant enforceable, it granted the Dreyfuses an equitable servitude allowing their use of the encroaching in-law unit. After the decision, the parties agreed no further trial was needed. In March 2023, the court entered judgment but reserved on attorney fees.

In June 2023, both parties moved for prevailing party attorney fees under section 1717. The Dreyfuses sought $1,563,536 and argued they were the prevailing party because the McNivens "only" prevailed in defending against the Dreyfuses' cross-complaints. The McNivens sought $1,015,476 and argued they were the prevailing party because they successfully prevented a threatened violation of the covenant and were thus entitled to fees under its enforcement clause.

In December 2023, the trial court found the McNivens were the prevailing party, awarded them $927,249.19, and denied the Dreyfuses' fee request. The court found that "the most important issue" "was the validity of the Restrictive Covenant," and the McNivens' "success was complete, unqualified and unequivocal." As for the McNivens' breach of covenant claim, the court focused on which party succeeded in its contentions. It determined the McNivens succeeded in obtaining "both a temporary restraining order and a preliminary injunction restraining and enjoining the Dreyfuses from violating the Restrictive Covenant, or performing construction or demolition work, except as specified in" the injunction. It thus concluded their breach claim was moot because the McNivens successfully enjoined the Dreyfuses' construction plans, and therefore "through the litigation obtained the relief they sought." It noted that, although the Dreyfuses succeeded in obtaining

4

an equitable servitude for their in-law unit, that success was "made possible only" by the McNivens prevailing as to the covenant's validity. Thus, it concluded that "[c]onsidering the case as a whole," the McNivens obtained the greater relief on the contract and were the prevailing parties.

## DISCUSSION

The Dreyfuses argue that the fee award should be reversed for a new prevailing party determination. We disagree.

"Section 1717, subdivision (a), provides in part: 'in any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or the prevailing party, then the party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees.'" (*DisputeSuite.com, LLC v. Scoreinc.com* (2017) 2 Cal.5th 968, 973.) "Subdivision (b)(1) of the statute provides: '[t]he court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment.'" (*Ibid.*) The "'party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract.'" (*Ibid.*) To determine the prevailing party, the court compares "'the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives,'" and "'' 'the extent to which each party ha[s] succeeded and failed to succeed in its contentions.''" (*Id.* at p. 974.) In determining litigation success, "courts should respect substance rather than form." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 877.)

"A trial court has wide discretion in determining which party is the prevailing party under section 1717, and we will not disturb the trial court's determination absent 'a manifest abuse of discretion, a prejudicial error of

5

law, or necessary findings not supported by substantial evidence.' " (*Silver Creek, LLC v. BlackRock Realty Advisors, Inc.* (2009) 173 Cal.App.4th 1533, 1539 (*Silver Creek*).)

To begin, the Dreyfuses mischaracterize the trial court's order. They contend it found the McNivens prevailed on the breach of covenant claim. Not so. Rather, "[c]onsidering the case as a whole," it concluded the McNivens obtained the "greater relief on the contract" and were thus prevailing parties. It found the McNivens succeeded in defending against the Dreyfuses' effort to invalidate the restrictive covenant, describing their success as "complete, unqualified and unequivocal." It also determined they succeeded in obtaining "both a temporary restraining order and a preliminary injunction restraining and enjoining the Dreyfuses from violating the Restrictive Covenant, or performing construction or demolition work, except as specified in" the injunction, thus mooting their breach claim and "obtain[ing] the relief they sought" "through the litigation." Although the Dreyfuses prevailed on their effort to continue to use their encroaching in-law unit, the court explained that the victory was only possible because of the McNivens' success in defending the validity of the covenant. Taking all this into account, the court determined the McNivens were the prevailing party for purposes of attorney fees.

The trial court did not abuse its discretion in determining the McNivens were the prevailing party. (*Silver Creek*, *supra*, 173 Cal.App.4th at pp. 1540–1541 [party obtained greater relief where record indisputably shows they succeeded on most important issues].) They prevailed as to the Dreyfuses' effort to invalidate the covenant — the "most important issue" in the case —and successfully enjoined construction that would have violated the covenant. Although the Dreyfuses succeeded in obtaining an equitable

6

servitude for their in-law's encroachment, that success was made "possible only by" the covenant's validity — which the Dreyfuses aggressively, but unsuccessfully, attacked. The Dreyfuses do not challenge these conclusions. Put simply, the McNivens obtained the " 'greater relief' " on the contract, and succeeded in " 'their litigation objectives' " by upholding the validity of the covenant and enjoining the Dreyfuses from violating it. (*DisputeSuite.com, LLC v. Scoreinc.com, supra,* 2 Cal.5th at pp. 973–974; *Hsu v. Abbara, supra,* 9 Cal.4th at p. 877 [courts respect substance rather than form in determining prevailing parties].) Thus, the court did not abuse its discretion in determining they were the prevailing party. (*Silver Creek,* at pp. 1540–1541; *de la Cuesta v. Benham* (2011) 193 Cal.App.4th 1287, 1295.)

The Dreyfuses arguments to the contrary are not persuasive. They contend the trial court made impermissible "post-judgment factual findings" on the breach claim, but courts are not prohibited from making factual findings on the record before it for purposes of determining a prevailing party. (*Silver Creek, supra,* 173 Cal.App.4th at p. 1539.) And because we conclude that the trial court did not find that the McNivens were the prevailing party on the breach claim — instead considering the claim in the context of the litigation — we need not determine whether such a finding would have required us to remand under section 1717, subdivision (b)(2).

Next, relying on prefatory language in the covenant's enforcement clause — "[i]n the event that there is a breach or violation of any of the covenants or agreements" — the Dreyfuses urge us to interpret the clause as requiring proof of an actual or anticipatory breach before fees can be awarded. Even if their interpretation is correct, we see no reason to reverse the judgment.

7

Substantial evidence supports an implied finding that the Dreyfuses were planning to breach the covenant, and fees were thus authorized under the Dreyfuses' own interpretation of the enforcement clause. (*Silver Creek*, *supra*, 173 Cal.App.4th at p. 1539 [we review factual findings in § 1717 orders for substantial evidence].) The Dreyfuses and their architect acknowledged the plans violated the covenant, and the Dreyfuses acknowledged they intended to follow through on those plans. The Dreyfuses spent approximately $1.5 million opposing the McNivens' efforts to prevent violative construction, and they attempted to invalidate the covenant — requiring a nine-day trial. When issuing its preliminary injunction, the trial court found the plans "clearly violate[d]" the covenant, and the McNivens were likely to succeed on their contract claims. Thus, the record supports an implied finding that the Dreyfuses anticipatorily breached the covenant for purposes of an entitlement to attorney fees. (*Ibid.*)

## DISPOSITION

The judgment is affirmed. The McNivens shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

8

_____

RODRÍGUEZ, J.

WE CONCUR:


_____

TUCHER, P. J.


_____

FUJISAKI, J.

A169807; *McNiven et al. v. Dreyfus et al.*