[No. G043788. Fourth Dist., Div. Three. Mar. 29, 2011.]

REGINALD DE LA CUESTA, Plaintiff and Appellant, v.
ESTHER BENHAM et al., Defendants and Respondents.

**COUNSEL**

Jan Vozenilek for Plaintiff and Appellant.

Philip N. Friedman for Defendants and Respondents.

**OPINION**

**SILLS, P. J.—**

## I. INTRODUCTION

This case tests the limits of a trial court's discretionary authority to determine that there is no "prevailing party" under Civil Code section 1717. Here, a landlord brought an unlawful detainer action and sought unpaid rent. The tenant asserted she owed the landlord *nothing* because there were leaks in the premises. The day before the trial the tenant vacated the premises, so the case went to trial only on the landlord's money claims. The landlord recovered 70 percent of what he claimed was owing. Nevertheless, the trial court ruled that there was no "prevailing party" for purposes of the attorney fee clause in the lease agreement.

We reverse. The result was *so* lopsided that, even under an abuse of discretion standard, it was unreasonable to say the landlord was not the prevailing party.

## II. FACTS

Reginald de la Cuesta, the landlord, rented out a set of five suites in Laguna Hills to Esther Benham, the tenant, and her company, Suits 4 U, under a lease agreement requiring the tenant to pay $15,000 a month (later increased to about $15,800). By November 2008 the tenant had stopped making rent payments, and in mid-December 2008 the landlord had served a three-day notice to pay rent or quit. In a complaint for unlawful detainer filed in early January 2009, the landlord claimed $34,000 in unpaid rent through December 31, 2008. The landlord also claimed other damages of about $32,600.[1]

The tenant quickly answered the unlawful detainer complaint, asserting that she owed *nothing*: The landlord had breached the warranty of habitability, and refused to repair certain water and sewage leaks. Thus the answer asserted (without further specification) that "The rental value is currently zero

---

[1] All figures in this opinion are to the nearest round number.

The $32,600 figure consisted of alleged underpayments of common area maintenance charges of some $13,000 from 2007, $9,600 from 2008, and late fees of about $10,000.

due to the health issues," and went on to claim that the "lease be ordered forfeit" and the landlord declared "unable to sue thereon" because of "fraud in the inducement." (In a trial brief the tenant would assert that the premises "leaked both rain and sewage water like a sieve.")

The case was scheduled to go to trial on Monday, February 23, 2009. However, since the tenant vacated the premises the previous weekend—indeed, the day before—the court converted the case to an ordinary civil action (see Civ. Code, § 1952.3), and, as such, the case did not come to trial until November 30, 2009. The trial court squarely rejected the tenant's fraud allegations, finding that the tenant was both an attorney and a real estate broker and was represented by a realtor in entering into the transaction, and in any event the property was in good condition when the lease was signed.

As to rent, the landlord had sought $103,000 in total monetary damages in an amended trial brief. The trial court awarded $69,500. The calculations were as follows: The rent due without any deductions was $61,200, but, because there were 84 days when "the tenancy was affected by water leaks," and "the affected area" was about 25 percent of the premises, the court decided that a reduction of $11,100 was in order. The trial court also found that the common area maintenance charges should be limited to what they were estimated to be in the lease ($1,600) a month, which meant that the total common area maintenance charges due were about $12,400. With late charges stipulated to be $7,000, the judgment came in at about $69,500.

Costs were to be determined by posttrial motion, and, in February 2010, the landlord made a motion for about $42,200 in attorney fees. The motion was denied. We quote the entirety of the minute order denying the request: "Motion by plaintiff for an award of attorney's fees in the amount of $42,163 against defendant Esther Benham is denied. The court finds that there is no prevailing party for purposes of awarding attorneys fees. While plaintiff did obtain possession that was due to defendant surrendering the property. The amended trial brief filed by plaintiff on 12/01/09 requested total monetary damages of $103,015 which was reduced significantly. The plaintiff's statement of decision filed 01/22/10 notes that the court reduced the [common area maintenance] charges requested and the award was reduced due to water damage. This appears to be a good news bad news situation and under *Nasser* [*v. Superior Court*] (1984) 156 Cal.App.3d 52, 59–60 [202 Cal.Rptr. 552] the Court has discretion not to award fees."

From that postjudgment order the landlord has filed this appeal.

## III. DISCUSSION

### A. *Entitlement and Discretion*

Under the rule of stare decisis, the governing case for "prevailing party" determinations under section 1717 of the Civil Code[2] is *Hsu v. Abbara* (1995) 9 Cal.4th 863 [39 Cal.Rptr.2d 824, 891 P.2d 804] (*Hsu*), with some additional light thrown on the subject by *Scott Co. v.'Blount, Inc.* (1999) 20 Cal.4th 1103, 1109 [86 Cal.Rptr.2d 614, 979 P.2d 974] (*Scott*).[3]

It is important to look at what *Hsu* actually held: There, after a flurry of offers and counteroffers that had not resulted in a deal to sell a house, the would-be buyers sued the erstwhile sellers, claiming that the buyers had indeed accepted a particular counteroffer to buy the house for $297,000. The buyers lost when the trial court ruled that a new offer made by the prospective buyers after the purported acceptance extinguished the previous counteroffer for $297,000; even so, the trial court denied the winning (but now absolved of any obligation to perform) "sellers" their attorney fees, albeit not giving any explanation. On appeal, the intermediate appellate court affirmed, reasoning that under an abuse of discretion standard the erstwhile sellers had failed to discuss " 'all of the pertinent facts in the record' " which would bear on the " 'issue of abuse of discretion.' " (*Hsu, supra*, 9 Cal.4th at p. 870.) But the Supreme Court reversed, holding that the sellers were *entitled* to their fees because they had obtained a " 'simple, unqualified win.' " (*Id.* at pp. 876, 877.)

Much of the *Hsu* opinion represents the effort of the high court to reconcile what we might call the "discretion clause" of section 1717 with the "entitlement clause" of section 1717. (See *Hsu, supra*, 9 Cal.4th at pp. 871–876.) Both clauses are set forth in subdivision (b)(1) of the statute. Structurally, the entitlement clause comes first, with the statute first declaring that (a) the trial court must determine who is the "prevailing party," and then (b) defining the "prevailing party" as the party who recovered a greater relief in the action on the contract. ("The court, upon notice and motion by a party, *shall* determine who is the party prevailing on the contract for purposes of this section,

---

[2] All further statutory references in this opinion are to the Civil Code.

[3] Other Supreme Court cases in the section 1717 area have had no occasion to parse the "prevailing party" provision of section 1717 in the context of how much a litigant must win before the litigant can recover fees under section 1717 (either as a matter of discretion or by right). *Santisas v. Goodin* (1998) 17 Cal.4th 599 [71 Cal.Rptr.2d 830, 951 P.2d 399] explores the situation when there is a voluntary pretrial dismissal and tort or other noncontract claims, *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084 [95 Cal.Rptr.2d 198, 997 P.2d 511] and *Trope v. Katz* (1995) 11 Cal.4th 274 [45 Cal.Rptr.2d 241, 902 P.2d 259] involved, respectively, in-house counsel and attorneys representing themselves.

whether or not the suit proceeds to final judgment. Except as provided in paragraph (2), *the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract.*" (§ 1717, subd. (b)(1), italics added.)) But then comes the discretion clause, which gives a court permission to determine no party prevailed on the contract. ("The court may also determine that there is no party prevailing on the contract for purposes of this section." (*Ibid.*))

As shown by the facts in the *Hsu* case itself, the court's reconciliation yielded this rule: A "simple, unqualified win" (on the contract, of course) takes a case out of the discretion clause and puts it into the entitlement clause. (See *Hsu, supra,* 9 Cal.4th at pp. 876–877.)[4] That was clearly the case in *Hsu,* where the erstwhile sellers had obtained such a win.

The *Hsu* court, however, left the distance between, on the one extreme, a "simple, unqualified win" *entitling* the winner to fees—and, on the other, a split decision, clearly leaving no party *entitled* to fees—unexplored. The relevant language, however, is worth cataloging:

On the split decision (no entitlement) end, the court's phrases were: "so equivocal" (*Hsu, supra,* 9 Cal.4th at p. 874), "mixed result" (*id.* at p. 875), "opposing litigants could each legitimately claim some success in the litigation" (*ibid.*), and " 'ostensibly prevailing party receives only a part of the relief sought' " (*ibid.*).

On the simple unqualified win (entitlement) end, the formulations were: "*not* mixed" (*Hsu, supra,* 9 Cal.4th at pp. 875–876, original italics), "purely good news for one party and bad news for the other" (*id.* at p. 876), obtaining "all relief requested" (*ibid.*), and "litigation success is not fairly disputable . . ." (*ibid.*).

---

[4] The phrase was taken from Justice Wallin's opinion for this court in *Deane Gardenhome Assn. v. Denktas* (1993) 13 Cal.App.4th 1394, 1398 [16 Cal.Rptr.2d 816] (*Deane Gardenhome*) ("The judgment entered was a simple, unqualified win for the Denktases.").

*Deane Gardenhome* adumbrated the *Hsu* decision by holding that a certain result was clearly governed by the entitlement clause, not the discretionary clause. The dispute involved a family who had painted their home particular shades of pink and green after obtaining permission from the homeowners association president to do so. The homeowners association denied its president's representation, sued, and lost when the trial court ruled the president had indeed "approved the color choice." (*Deane Gardenhome, supra,* 13 Cal.App.4th at p. 1396.) That is, the family had obtained a "simple, unqualified win." However, the trial court simply refused to enforce the attorney fee clause on the theory the case was just too petty to apply it, i.e., the gain to the family was "minute compared to the litigation costs." (*Id.* at p. 1399.) This court reversed, first noting that the family was *entitled* to its costs (*id.* at p. 1398), and then noting the asymmetry inherent in the trial court's determination: If relative economic interests could thwart the operation of section 1717, then attorney fee clauses in homeowners association CC&R's (covenants, conditions, and restrictions) would, in practical effect, be mostly unilateral affairs. (13 Cal.App.4th at p. 1399.)

■ But the *Hsu* court did provide a framework for exploring that distance: Essentially, the trial court is to attain an overview of the totality of the case, then compare the *extent* to which each party has won and lost: "Accordingly, we hold that in deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by '*a comparison of the extent* to which each party ha[s] succeeded and failed to succeed in its contentions.' " (*Hsu, supra*, 9 Cal.4th at p. 876, italics added, quoting *Bank of Idaho v. Pine Avenue Associates* (1982) 137 Cal.App.3d 5, 15 [186 Cal.Rptr. 695].)

■ To the degree that *Hsu* left any room to wonder whether anything short of total victory by one party might still *entitle* that party to fees (clearly "equivocal" "mixed" and "partial" results would not so entitle), an answer was supplied four years later in *Scott*: No. In section 1717 entitlement matters, said *Scott*, there is no substitute for "complete victory." Commenting on *Hsu*, the *Scott* court said: "When a party obtains a simple, unqualified victory by completely prevailing on or defeating all contract claims in the action and the contract contains a provision for attorney fees, section 1717 entitles the successful party to recover reasonable attorney fees incurred in prosecution or defense of those claims. [(Citing *Hsu, supra*, 9 Cal.4th at p. 877.)] If neither party achieves *a complete victory* on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." (*Scott, supra*, 20 Cal.4th at p. 1109, italics added.)

In the present case, we must agree with the trial court that landlord de la Cuesta's result falls short of a "complete victory." A portion of the unpaid rent (roughly a fifth) was deducted from what the landlord was otherwise entitled to, plus claims for unpaid common area maintenance charges were reduced by capping them to the time of the lease. Thus the landlord here cannot claim legal error in the trial court's decision.

### B. *Abuse of Discretion*

But just because a litigant is not entitled to its fees as a matter of the entitlement clause of section 1717 does not mean that discretion cannot be abused. If the law were: Unless you win a complete victory, the trial court has unfettered discretion to declare you a nonwinner, then *Hsu*'s "comparison of the extent" language and the actual text of section 1717 could readily be thwarted.

First, why even bother comparing the "extent" of a party's success or failure, or including a "prevailing party" attorney fee provision in a contract at all (no matter how otherwise fair or bilateral) if the trial court can simply then turn around and nullify that provision if there is anything less than 100 percent success as measured against the most extreme claim for relief taken by a litigant at any point during the litigation?

■ On top of that, there is the actual language of section 1717 itself, which *expressly* contemplates *some* sort of comparison of respective results: Otherwise the Legislature would not have defined "prevailing party" as the party obtaining "a grea*ter* relief" (italics added)—a comparative term. As noted in *Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1151 [70 Cal.Rptr.2d 769]: "Because the statute allows such discretion, *it must be presumed the trial court has also been empowered to identify the party obtaining 'a greater relief' by examining the results of the action in relative terms*: the general term 'greater' includes '[l]arger in size than others of the same kind' as well as 'principal' and '[s]uperior in quality.' " (Some italics added.)

■ And then there is the reality of litigation, almost universally recognized: Attorneys tend to err on the side of overstating the extent of the claims being presented on their client's behalves. If anything short of "complete victory" allows the trial court unrestricted freedom to ignore the *substance* of a result, then trial courts have the freedom to nullify the normal expectations of parties who enter into contracts with prevailing party attorney fee clauses. As *Hsu* said: "We agree that in determining litigation success, *courts should respect substance rather than form*, and to this extent should be guided by 'equitable considerations.' For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective." (*Hsu, supra*, 9 Cal.4th at p. 877, italics added & omitted.)

■ Our point is: If the results in a case are lopsided in terms of one party obtaining "greater relief" than the other in comparative terms, it may be an abuse of discretion for the trial court *not* to recognize that the party obtaining the "greater" relief was indeed the prevailing party. (*Silver Creek, LLC v. BlackRock Realty Advisors, Inc.* (2009) 173 Cal.App.4th 1533, 1541 [93 Cal.Rptr.3d 864] (*Silver Creek*) ["Although a trial court has broad discretion to determine the prevailing party in a mixed result case, its discretion is not unlimited."]; *Hilltop Investment Associates v. Leon* (1994) 28 Cal.App.4th 462, 468 [33 Cal.Rptr.2d 552] (*Hilltop*) ["Appellant's final argument is that the trial court's discretion under Civil Code section 1717 is not unlimited, a proposition with which we agree."].)

The next question obviously is: How lopsided must the results be before it is an abuse of discretion not to acknowledge that one party has clearly

prevailed? The reason the Legislature included the discretion clause in section 1717, of course, was obviously to allow trial courts to take into account the unique facts and circumstances of each case, as reflected in the "totality" and substance language from *Hsu*. So we will not attempt to fashion a one-size-fits-all rule. That said, the line was crossed in the case before us.

Of greatest significance here is the relative extent of the success of each party in comparison to its basic litigation position: The tenant, Benham, asserted the extreme position that she owed *nothing* by way of back rent because of the water and sewage leaks; she ended up with a judgment of about $70,000 against her. By contrast, at his most exuberant (and that in an amended trial brief), the landlord, de la Cuesta, asserted he was owed $103,000 but that was cut back to $70,000. The landlord, in short, got about 70 percent of the *most* of what he sought going into trial; the tenant got zero percent.[5]

On top of those basic disparities, there are *Hsu*'s " 'equitable considerations' " to consider: The tenant vacated the premises *the day before trial was initially scheduled to begin*, which, in equitable terms, was a clear victory for the landlord.[6] Repossession of the premises was at least *one* of the landlord's main litigation objectives, the litigation had clearly resulted in that repossession, and only the tenant's unilateral 11th-hour capitulation deprived the landlord of being able to say that the trial itself resulted in the achievement of that objective.

Plus, the trial court unequivocally rejected all of the tenant's fraud claims, choosing instead simply to offset about 20 percent of the back rent otherwise due to account for leaks that the landlord simply had not fixed and cap the common area maintenance arrearages to those contemplated by the contract.[7]

---

[5] Another reason trial courts cannot have unfettered discretion to make a "no prevailing party" determination in a case of lopsided results is to avoid a potential anomaly inherent in the "complete victory" standard. Consider: Most of the time, attorneys have an incentive to assert the maximal claims possible on behalf of their clients. (Sometimes they get sued themselves if they don't!) But if anything less than complete victory means that a client loses what would otherwise have been "prevailing party" status under section 1717, the attorney is crunched into a dilemma. Risk a malpractice suit by *not* asserting maximal claims, or risk a malpractice suit by forfeiting "prevailing party" status under section 1717 *by* asserting maximal claims.

[6] Subdivision (b)(2) of section 1717 says there is to be no prevailing party where the action "has been voluntarily dismissed or dismissed pursuant to a settlement of the case." By the statute's own terms, neither situation (there was no voluntary dismissal and the possession claim was only rendered moot, it wasn't *settled*) applies here.

[7] Tenant Benham offers no authority for the idea that the offset was for "constructive fraud," and in fact the express finding of the trial court rejecting fraud in the inducement belies any such thought.

Tenant Benham offers no abuse of discretion case which comes anywhere close to this lopsidedness. She offers four cases. All are distinguishable.

*Nasser v. Superior Court, supra,* 156 Cal.App.3d 52 really was a "mixed result" case: There, a tenant wanted his market to stay in a certain location for another three years based on an option to renew his lease, and sued to establish a monthly rental (the original lease provided for a cost-of-living standard). While the tenant got to stay in the premises and the lease was validated, the tenant also got hit with, as the court expressly noted, a more than *68 percent increase* on what his rent had previously been (going from $400 to $674) (*id.* at p. 55), and which was more than 19 percent above the highest the tenant had offered in pretrial negotiations (*ibid.* [previous offer was $565]). The trial court's determination of no prevailing party was thus reasonable. (*Id.* at p. 60.)

*Kytasty v. Godwin* (1980) 102 Cal.App.3d 762 [162 Cal.Rptr. 556] (*Kytasty*), the genesis of the "good news bad news" trope that has become widely invoked in section 1717 prevailing party law,[8] was similar to *Nasser* in that a given "right" was validated, but its scope was curtailed: There, a claimed 60-foot-wide easement was reduced by *80 percent* to 12 feet. Using a "good conscience test," the appellate court could not find that either side had prevailed. (See *Kytasty, supra,* 102 Cal.App.3d at p. 774 ["The judgment as well as this opinion must be considered good news and bad news to each of the parties, and in good conscience we cannot say attorneys' fees should be awarded either for the trial or for this appeal."].)

*Hilltop, supra,* 28 Cal.App.4th 462 is notable for the chutzpah of the party seeking fees—no wonder that party failed to show any abuse of discretion for not having been declared a prevailing party: The case arose out of a squabble in the movie industry over an uncompleted film. A group of what appears from the opinion to have been investors (and apparently some production companies) was sued by what appears to have been two firms controlled by a particular promoter, to prevent the investors from using the uncompleted film. The investors and production companies cross-complained for breach of contract, and included alter ego allegations against the promoter. The complaint filed by the promoter-controlled firms was dismissed, but the investors and a production company recovered damages of over $150,000 and $59,000 respectively against the promoter's firms. However, the promoter prevailed on his own behalf on the alter ego allegations, so *he* claimed attorney fees as

---

[8] Certain images have a way of dominating certain areas of the law. Refrigeration figures often in free speech jurisprudence, eggshells in tort damages, baseball stadiums in the law of good faith settlement offers.

prevailing party. Needless to say, he didn't get them. Under the circumstances, said the court, the "result was a draw" and the court invoked *Kytasty*'s good news bad news language. (*Id.* at p. 468.)

Finally, *Jackson v. Homeowners Assn. Monte Vista Estates-East* (2001) 93 Cal.App.4th 773 [113 Cal.Rptr.2d 363], was another mixed result case that was a far cry from lopsided: Three plaintiffs sued a homeowners association with a senior citizen provision in its CC&R's, apparently because they wanted to rent out their property. (See *id.* at p. 788.) They completely lost in the trial court (they were to take nothing and were not entitled to any relief) (*ibid.*), but appealed and got an opinion that tinkered with the second sentence of one paragraph of the CC&R's (see *ibid.*). Subsequent to the appeal, the parties agreed to settle the case (but reserving the attorney fee issue for future adjudication): The homeowners association paid the plaintiffs $2,500. A casual reader, in fact, might completely miss the significance of the modification obtained at the Court of Appeal, but, as explained elsewhere in the opinion, apparently it eliminated a provision that had "effectively prevented" the plaintiffs from "renting their property." (*Ibid.*) In any event, the trial court's determination that the plaintiffs were not prevailing parties was upheld on appeal. The court noted that "Both sides claim victory" and "substantial arguments" supporting both "sets of claims" balanced out. (*Ibid.*) After all, the association had gotten away with only paying a nuisance settlement monetarily, and the plaintiffs "did not obtain *any* injunctive relief as requested in the complaint." (*Ibid.*, italics added.)

In contrast with *Nasser, Kytasty, Hilltop* and *Jackson*, there is the remarkable case of *Ajaxo Inc. v. E\*Trade Group Inc.* (2005) 135 Cal.App.4th 21 [37 Cal.Rptr.3d 221] (*Ajaxo*)—remarkable because it really cannot be reconciled with the trial court's order in this case *unless* one were to throw up one's hands and say that anything less than a complete victory gives the trial court carte blanche to determine section 1717 prevailing party status as it pleases.

*Ajaxo* involved tripartite litigation between three companies: One which had breached a nondisclosure agreement (the breacher), one whose trade secret had been aired by the breaching company (the victim), and one which actually received the trade secret (the recipient). The victim company sought lost profits of $6 million per year from the date of disclosure, which by the time of trial amounted to $19.2 million. (*Ajaxo, supra,* 135 Cal.App.4th at p. 59, fn. 35.) But the victim company did not receive $19.2 million. It got $1.29 million in restitution instead—a recovery of *less than 10 percent* of its maximum figure. (See *id.* at p. 57.) The trial court determined that the victim company *was* the "prevailing party" despite an argument that it had not achieved "sufficient success" to qualify: Four of the victim company's theories of liability were rejected, it lost a fight for a permanent injunction,

and it received "only a fraction of the damages it sought on its contract claim." (*Id.* at pp. 58–59.) Despite those disappointments, the appellate court affirmed a prevailing party determination. The two factors it pointed to were (1) its contract claim resulted in a "simple, unqualified verdict on the breach of contract claim" and (2) the damages "in excess of" $1 million. (*Id.* at p. 59.)

And finally, there is *Silver Creek*, a case which followed *Hsu*'s equitable consideration language in terms of the relative litigation success of the parties to conclude that the trial court had indeed abused its discretion in refusing to declare a would-be seller the prevailing party, even though the seller *lost* one of the two issues contested: *Silver Creek* was another real-estate-deal-fallen-through case, in which the seller struck first, seeking a declaration that it had validly terminated the transaction and was entitled to retain the buyer's deposit. It won on the termination issue, but lost on the deposit issue, and the trial court determined there was no winner, "essentially declaring a tie because each party won one of the claims presented for resolution." (*Silver Creek, supra,* 173 Cal.App.4th at p. 1540.)

But the trial court's approach "oversimplified its duties" simply by "counting the number of contract claims presented." (*Silver Creek, supra,* 173 Cal.App.4th at p. 1540.) (We note: Essentially, the *Silver Creek* court was thus condemning the simple "good news bad news" approach to § 1717 when it is done without reflection on the *relative* litigation success of the respective parties.) The court noted the relative disparity in the importance of the two issues as represented by the money involved: $29.75 million for the termination issue (i.e., who would ultimately gain possession of the property) versus $1.13 million for the deposit issue. Hence it was clear that the seller had obtained its "main litigation objective," had "obtained the greater relief on the contract," and it was thus an abuse of discretion for the trial court *not* to have declared the seller the prevailing party. (173 Cal.App.4th at pp. 1540–1541.)

█ To be sure, the landlord's win here was not "unqualified" as in *Ajaxo* (we recognize a total reduction of the maximum amount sought by about 31 percent), and the disparity in positions (zero versus nearly 70 percent) not quite as extreme as in *Silver Creek*. Even so, it is hard to square either *Ajaxo* or *Silver Creek* with the trial court's decision, even tested under an abuse of discretion standard. Clearly, the landlord here obtained the "greater" part of its two litigation objectives: repossession and compensation for the tenant's occupation. It is not enough to hide the difference under the cover of an abuse of discretion standard: As *Hsu* and the text of section 1717 show, discretion must be reasonable given the totality of the case and all the facts and circumstances.

## IV. CONCLUSION

The order determining that there was no prevailing party is reversed. The matter is remanded with directions to enter a new order declaring plaintiff de la Cuesta to be the prevailing party, and for further proceedings to determine reasonable attorney fees pursuant to section 1717.

Aronson, J., and Ikola, J., concurred.