Filed 12/18/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| WATERWOOD ENTERPRISES, LLC, | B296830 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. NC060787) |
| v. | |
| CITY OF LONG BEACH, | |
| Defendant and Respondent. | |

APPEAL from an amended judgment of the Superior Court of Los Angeles County, Patrick T. Madden, Judge. Affirmed in part, reversed in part, and remanded with directions.

Stuart Kane, Donald J. Hamman and Eve A. Brackmann for Plaintiff and Appellant.

Amaro Baldwin, Michael L. Amaro and Sanaz Cherazaie for Defendant and Respondent.

_____

This appeal follows a 10-day trial, a $45,050 damage award in plaintiff's favor on a single cause of action, and the parties' combined attorney fees of more than $500,000. The issue before us is whether the trial court erred in finding that defendant was the prevailing party pursuant to a contractual attorney fee provision.

We conclude the trial court abused its discretion in finding that defendant—who lost the only cause of action in the case—was the prevailing party. We reject both parties' arguments based on the definition of prevailing party in the attorney fees provision in their contract. Any such definition would not trump the definition of prevailing party in Civil Code[1] section 1717. We also conclude the trial court's consideration of the parties' settlement offers in determining which party achieved the greater relief under section 1717's definition of prevailing party was contrary to precedent.

Finally, we reject defendant's argument that it prevailed because it admitted it owed plaintiff a portion of the contractual damages plaintiff was seeking, and the jury's lump sum award was for less than plaintiff's damages claim at trial. Defendant's argument is inconsistent with section 1717, subdivision (b)(2), under which a defendant who owes a debt becomes a prevailing party by tendering to the plaintiff the full amount owed and alleging such tender in the defendant's answer. Defendant never tendered any portion of plaintiff's damages, let alone any portion it admitted it owed. To the contrary, it denied all liability in its answer, and requested a jury instruction indicating that it "denies" that it breached the contract. Defendant apparently did

_____

[1] Undesignated statutory citations are to the Civil Code.

2

not consider section 1717, subdivision (b)(2), and after a jury trial, defendant lost the sole cause of action in the case. The trial court thus abused its discretion in finding defendant was the prevailing party.

On remand, the trial court's discretion is limited to finding either (1) plaintiff was the prevailing party; or (2) there was no prevailing party. We reverse the amended judgment only insofar as it orders plaintiff to pay defendant's attorney fees.

## BACKGROUND

The City of Long Beach (the City) sold property to Waterwood Enterprises, LLC (Waterwood) in 2005, then leased it back for a 10-year term beginning on October 14, 2005. The City used the property as a police evidence storage facility. The lease terminated on October 31, 2015.

### 1. *The Lease Terms*

The lease provides: "Tenant [the City] at its sole cost and expense, shall maintain the Demised Premises and each part thereof, structural and nonstructural, in good order and condition, and . . . shall make any necessary Repairs thereto, interior and exterior, whether extraordinary, foreseen or unforeseen. When used in this Article VII, the term 'Repairs' shall mean all Alterations necessary for Tenant to properly maintain the Demised Premises in at least the same order and condition as of the date hereof, normal wear and tear excepted." (Boldface & underscoring omitted.) The lease defines "Demised Premises" as the land and its improvements.

Article XXXV of the lease contains the following attorney fee provision: "If any legal action should be commenced in any court regarding any dispute arising between the parties

3

hereto . . . concerning any provision of this Lease or the rights and duties of any person in relation thereto, then the prevailing party therein shall be entitled to collect its reasonable expenses, attorney fees and court costs, including the same on appeal. As used herein, the term 'prevailing party' means the party who, in light of the claims, causes of action, and defenses asserted, is afforded greater relief."

## 2. *The Complaint*

On August 29, 2016, Waterwood filed its complaint against the City alleging a single cause of action for breach of a written contract. Waterwood averred that when the City left the premises, the roof had multiple leaks. "The leaks were so bad that, in the rain storm within two months of the surrender of the Premises, ceiling tiles became waterlogged and collapsed, carpet and the underlying padding were damaged, and a new tenant was unable to fully use the Premises." Waterwood alleged that the City "has acknowledged that it should have paid for repairs to the roof, but failed to do so."[2]

Waterwood further alleged that when the City left the premises, "the air conditioner was inoperable and the HVAC system had not been properly maintained or repaired. The air conditioner was operating and effective when the Lease was

_____

[2] In a letter dated April 21, 2016, the deputy city attorney wrote Waterwood's principal: "While we acknowledge that the City should have paid for repairs to the roof necessary to put it into working condition, we do not believe the Lease required the City to pay for a replacement roof, nor do we believe that the Lease required the City to repair or replace an HVAC system that was in working order at the time the City vacated the Premises."

entered, and its failure was not the result of reasonable wear and tear." Waterwood also alleged when the City left the premises, that "the block wall at the southeast co[rn]er of the Premises was damaged as if hit by a truck, such that concrete blocks were cracked, fence supports were tilted, and fencing was leaning." Waterwood further averred that when the City left the premises, "grass was growing in, and causing deterioration of, asphalt at the Premises, and there were [*sic*] severe indentations occurred in the asphalt." When the City left the premises, "concrete on the Premises had been broken, cracked, and subsided or shifted such that water ponds [*sic*] and may cause deterioration of the base under the concrete, and has allowed grass to grow in the concrete areas." Waterwood reiterated that the foregoing conditions were not mere reasonable wear and tear.

Waterwood alleged it was informed and believed the amounts due under the lease totaled at least $150,000. Waterwood also requested its reasonable attorney fees.

### 3.     *The City's Answer*

The City answered on October 4, 2016. The City entered a general denial, denying that "the Plaintiff sustained damages in the sum or sums alleged, or in any other sum or sums, or at all." Although the City raised 18 affirmative defenses, it did not allege or acknowledge in those defenses any debt owed to plaintiff or that it had tendered any such debt to plaintiff.

### 4.     *Trial*

The record on appeal does not include a reporter's transcript. We thus rely on the description of the trial in the trial court's statement of decision following the posttrial motions for attorney fees: "At trial, there was considerable testimony as to

5

various items plaintiff contended that defendant had a duty to repair before the lease expired and that because defendant failed to repair the items, plaintiff argued it was entitled to recover as damages the cost to repair the items. The significant contested items were plaintiff's contention that: (a) defendant was required to remove and replace an entire roof on one of the buildings; (b) defendant was required to replace two air conditioners; and (c) defendant was required to tear up and replace all of the existing asphalt parking lot on the property and nearby concrete pads." The City contended "that the roof did not require replacement, because any deterioration was due to reasonable wear and tear. As to the two air conditioners, defendant argued that neither air conditioner required replacement. As to the condition of the asphalt, defendant admitted that plaintiff was entitled to recover some of its claimed damages to repair the asphalt, because some of the asphalt had deteriorated based on use that was beyond any reasonable wear and tear." The City argued it "was not liable for the replacement cost of the entire parking lot or the concrete pads."

5. *Jury Instructions*

The record also contains the trial court's jury instructions, which demonstrate that the trial court instructed the jury: "Waterwood Enterprises LLC claims that it and The City of Long Beach entered into a written contract for the 10-year lease of the subject commercial property. Waterwood Enterprises LLC claims that The City of Long Beach breached this contract by not surrendering the premises at the end of the lease broom clean and in the same order and condition as the premises was in [*sic*] on the date the lease began subject to reasonable wear and tear; by not performing repairs and maintenance during the ten-year

6

tenancy, and by not repairing certain damage to the property that occurred during the term of the lease.

"Waterwood Enterprises LLC also claims that The City of Long Beach's breach of this contract caused damages to Waterwood Enterprises LLC for which the City of Long Beach should pay."

The trial court further instructed the jury: "The City of Long Beach *denies* that it breached the lease agreement, and contends that it completed the repairs required under the lease agreement, except for items caused by reasonable/normal wear and tear." (Italics added.)

Regarding damages, the trial court told the jury that it could award Waterwood damages only if Waterwood proved all of the following:

"1. That Waterwood Enterprises LLC and The City of Long Beach entered into a contract;

"2. That Waterwood Enterprises LLC did all, or substantially all, of the significant things that the contract required it to do;

"3. That The City of Long Beach failed to do something that the contract required it to do;

"4. That Waterwood Enterprises LLC was harmed; and

"5. That The City of Long Beach's breach of contract was a substantial factor in causing Waterwood Enterprises LLC's harm."

### 6.    *Judgment*

The jury found in favor of Waterwood on the only cause of action before it. The jury found the City had breached the contract (the lease) and awarded Waterwood $45,050 in contractual damages. In a special verdict, jurors answered the

following two questions affirmatively: (1) "Did Defendant, City of Long Beach, breach the written lease contract?"; and (2) "Was the breach of the written lease contract a substantial factor in causing Plaintiff's damages?" In its special verdict, the jury did not identify the kind of repairs for which it was awarding damages, but merely entered a lump sum.

### 7. *Waterwood's Attorney Fees Motion*

In a posttrial motion for attorney fees, Waterwood sought $307,068.50 in fees plus an additional $15,000 for bringing its attorney fee motion. Waterwood also sought approximately $12,000 in costs. Waterwood argued that it was the prevailing party under the contract and was entitled to its reasonable attorney fees and further argued that all its fees were reasonable.

### 8. *The City's Attorney Fees Motion*

The City filed a competing motion for attorney fees, arguing that it, not Waterwood, was the prevailing party. According to the City: "Although this was a breach of contract case, the history of the events which brought about the filing of this action are paramount in determining who the 'prevailing party' is, for purposes of attorney's fees under Section 1717, as the 'crux' of this case was about damages. The City admitted from the beginning that it should have paid for some repairs to the roof necessary to put it into working condition, as well as a few other items. However, it staunchly disputed Plaintiff's claim that the City should tear off and replace the entire roof, and install two entirely new HVAC units. The City also denied that it had an obligation to tear up the entire asphalt parking lot, and nearby concrete pads, and install new asphalt and concrete."

The City argued it achieved its main litigation objective "to pay Plaintiff for some, but not all, of the claimed repairs." The City stated that it incurred $172,375 in attorney fees, $17,673.50 in costs, and $39,483.50 in expert fees, for a total of $229,532.

### 9. *Postjudgment Attorney Fee Award*

The trial court awarded Waterwood costs in the amount of $19,905.04. The trial court found that Waterwood was the prevailing party for purposes of a costs award under Code of Civil Procedure section 1032 because Waterwood achieved a net monetary recovery. The trial court awarded the City $172,375 in attorney fees. On appeal, no one has challenged the trial court's award of costs to Waterwood; the only issue before us is the trial court's award of attorney fees to the City.

In its statement of decision, the trial court explained its reasoning for awarding attorney fees to the City: Waterwood's complaint "asserted a single cause of action for breach of contract." "The sole defendant was the City." "After the lease expired, the parties engaged in discussions regarding the condition of the property both before commencement of the lease and at the end of the lease. Waterwood claimed that during the lease, the City damaged the Property and sought compensation from the City for the claimed damage. On the other hand, the City argued that most of the claimed damage by Waterwood was caused by normal wear and tear and, on that basis, the City was not responsible for most of the damage claimed by Waterwood." Each party made various settlement offers, including Waterwood's Code of Civil Procedure section 998 offer to compromise for $120,000 plus attorney fees and costs and the City's Code of Civil Procedure section 998 offer to compromise for $40,001. No party accepted the other's settlement offers.

9

Citing *Hsu v. Abbara* (1995) 9 Cal.4th 863, 876 (*Hsu*), the trial court reasoned that to determine the prevailing party, it had to consider the parties' demands as disclosed by their pleadings, trial briefs, and opening statements. The trial court did not discuss the parties' pleadings, trial briefs, or opening statements, but instead recounted the parties' settlement offers in determining that the City's settlement offer was closer to the jury's award than was Waterwood's settlement offer. "The jury's verdict was $5,050 greater than the City's statutory [Code of Civil Procedure section 998] offer, while the verdict was $74,950 less than Waterwood's § 998 offer (which does not include Waterwood's considerable costs and attorney fees, which were part of Waterwood's § 998 offer)." The trial court also relied on the parties' "pre-litigation settlement discussions" to determine that the City was the prevailing party.

Based upon the settlement offers, the trial court concluded that "the City clearly succeeded on its claims and Waterwood did not. The jury did not require the City to pay Waterwood the cost of a new roof, the cost of new air conditioners or the cost to remove and replace the entire parking area, plus the concrete pads. Instead, the jury required the City to pay the cost to repair a portion of the parking lot, which was exactly the relief the City acknowledged to the jury that it should pay to Waterwood."

The trial court did not explain its rationale for concluding the jury's damage award was based on the cost to repair a portion of the parking lot. The award itself included only a lump sum and did not distinguish among the various items that Waterwood argued needed repair or replacement. The trial court concluded: "Simply stated, the jury's verdict was very good news to the City and terrible new[s] for Waterwood. Based on the litigation

10

objectives of the parties, defendant is clearly the prevailing party."

### 10.  *Amended Judgment*

The amended judgment provides:  (1) The City shall pay Waterwood damages of $45,050 with interest amounting to $1,987.06; (2) the City shall pay Waterwood costs of $19,905.04; and (3) Waterwood shall pay the City attorney fees in the amount of $172,375.  Thus, under the amended judgment, Waterwood owed the City a total of $105,432.90.

## DISCUSSION

### A.  Section 1717 Governs the Determination of the Prevailing Party

Section 1717 defines prevailing party as "the party who recovered a greater relief in the action on the contract."  (§ 1717, subd. (b)(1).)  Under section 1717, there may be one prevailing party (*Frog Creek Partners, LLC v. Vance Brown, Inc.* (2012) 206 Cal.App.4th 515, 529; see also *de la Carriere v. Greene* (2019) 39 Cal.App.5th 270, 276), or "no party prevailing on the contract . . . ."  (§ 1717, subd. (b)(1).)  "If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees."  (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109 [trial court did not abuse its discretion in determining plaintiff was the prevailing party even though it received less than 25 percent of the damages it sought].)  In exercising that discretion, our high court has counseled, "the trial court is to compare the relief awarded on the

contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." (*Hsu*, *supra*, 9 Cal.4th at p. 876.)

On the other hand, if a party achieves a " 'simple, unqualified win' " on the only contract claim between the parties, then the trial court has no discretion to find no party prevailed. (*Hsu*, *supra*, 9 Cal.4th at p. 876 [trial court erred in finding no prevailing party when defendant won the only contract claim in the case].) Thus, "a plaintiff who obtains all relief requested on the only contract claim in the action must be regarded as the party prevailing on the contract for purposes of attorney fees under section 1717." (*Ibid.*) The case before us is not such a case because Waterwood did not recover all its damages on its contract claim against the City and thus did not achieve an unqualified win.

Both sides argue that Article XXXV of the lease commands a finding that it was the prevailing party. Article XXXV defines prevailing party as "the party who, in light of the claims, causes of action, and defenses asserted, is afforded greater relief." Waterwood argues that unlike section 1717, this provision does not allow a finding of no prevailing party, and modifies the "party afforded greater relief" by the phrase "in light of the claims, causes of action, and defenses" in the case. Given that the City lost on all its affirmative defenses and that the jury awarded Waterwood damages on the only cause of action in the case— breach of the lease—Waterwood asserts it was the "party afforded greater relief" under the contract.

The City, on the other hand, argues that Waterwood has failed to satisfy its burden of demonstrating the trial court erred

12

in interpreting the lease.  The City argues the trial court's statement of decision was supported by substantial evidence and that the trial court properly applied the lease's definition of prevailing party to determine that the City prevailed.

Both parties' arguments miss the mark.  To the extent arguendo Article XXXV's definition of prevailing party conflicts with that in section 1717, section 1717 supersedes any such contractual variance.  (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 617 ["When a plaintiff files a complaint containing causes of action within the scope of section 1717 (that is, causes of action sounding in contract and based on a contract containing an attorney fee provision), and the plaintiff thereafter voluntarily dismisses the action, section 1717 bars the defendant from recovering attorney fees incurred in defending those causes of action, *even though the contract on its own terms authorizes recovery of those fees.*"]; *Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363, 373 ["Parties to a contract cannot, for example, enforce a definition of 'prevailing party' different from that provided in Civil Code section 1717."]; *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 707 ["[T]he lease contemplated an award of attorneys' fees to a cross-defendant who is dismissed as a result of a settlement.  Nevertheless, the definition of 'prevailing party' in Civil Code section 1717 is mandatory and cannot be altered or avoided by contract."].)

We also reject the City's argument that the trial court "specifically analyzed the contractual terms defining a prevailing party"; the trial court's statement of decision is devoid of any analysis of the definition of prevailing party in Article XXXV.  (Boldface, underscoring, & capitalization omitted.)

**B.    Standard of Review**

Under section 1717, a trial court has discretion to determine which party is the prevailing party for purposes of a contractual attorney fee provision. (*DisputeSuite.com, LLC v. Scoreinc.com* (2017) 2 Cal.5th 968, 973.) A trial court abuses its discretion when it relies on improper criteria. (*Y.R. v. A.F.* (2017) 9 Cal.App.5th 974, 983; see *Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 530.) A trial court also abuses its discretion if it relies on a fact wholly unsupported by the evidence. (*In re Marriage of Pasco* (2019) 42 Cal.App.5th 585, 590.) In part, this is because consideration of the evidence " ' " 'is essential to a proper exercise of judicial discretion.' " [Citations.].' " (*Ibid*; see also *Tire Distributors, Inc. v. Cobrae* (2005) 132 Cal.App.4th 538, 544 ["If there is no evidence to support the court's findings, then an abuse of discretion has occurred."].)

" ' "The scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion." ' " (*Hypertouch, Inc. v. Superior Court* (2005) 128 Cal.App.4th 1527, 1537.)

**C.    The Trial Court Abused Its Discretion in Finding the City Was the Prevailing Party**

**1.    The trial court relied on wholly unsupported facts**

As just noted above, a trial court abuses its discretion when it relies on facts wholly unsupported by the record. (*In re*

*Marriage of Pasco, supra*, 42 Cal.App.5th at p. 590.) The trial court's statement that the jury awarded damages based on the City's concession that it failed to repair the parking lot is unsupported by the record. In its answer, the City disputed all of Waterwood's allegations. At trial, the court instructed the jury: "The City of Long Beach denies that it breached the lease agreement, and contends that it completed the repairs required under the lease agreement, except for items caused by reasonable/normal wear and tear." The trial court further instructed the jury that to award damages, the jury had to find the City "failed" to do something it was required to do. The City cites to *no* concession that it breached the lease or that it owed Waterwood damages.

The record also does not support the trial court's finding that "the jury required the City to pay the cost to repair a portion of the parking lot . . . ." The special verdict form did not itemize by location the damages Waterwood was claiming. Instead, it provided a single line on which the jury was to place a damage award if it found the City had breached the lease. Although it is possible the jury awarded damages based on repairing the parking lot, the jury could have instead awarded damages based on repairing the roof, which the City admitted before trial and on appeal it should have fixed,[3] or on a combination of items. The

---

[3] The City concedes on appeal that it "admitted from the beginning that it should have paid for some repairs to the roof necessary to put it into working condition, as well as a few other items." The City concludes that "[t]he jury awarded $45,050, which accounted for the repairs to the roof necessary to put it into working condition, which the defense did not dispute it should pay under the contract." As noted in the text, this is not a

15

special verdict does not elucidate the basis for the damage award and does not support the finding that the award was based solely on the cost of repairing the parking lot.

### 2. The trial court relied on improper legal criteria

The trial court also abused its discretion in relying on improper legal criteria—specifically the parties' settlement offers—to conclude that the City was the prevailing party. The trial court concluded that "[b]ased on the parties' respective [Code of Civil Procedure] § 998, . . . offers to compromise, the defendant City clearly succeeded on its claims at trial, while Waterwood did not." The trial court also relied on the parties other "settlement discussions" predating their respective Code of Civil Procedure section 998 offers.

In determining the prevailing party under section 1717, a trial court may not consider the parties' settlement communications. "Settlement communications are not sources 'similar' to 'pleadings, trial briefs, [and] opening statements.' [Citation.] They were not presented at trial, and we decline to allow their use to establish that defendant's 'litigation objectives' were in fact different from the 'demands' it made on those claims throughout the litigation." (*Marina Pacifica Homeowners Assn. v. Southern California Financial Corp.* (2018) 20 Cal.App.5th 191, 204 (*Marina Pacifica*).) As Division Eight of our court observed, "[t]he objectives in settlement negotiations are utterly unlike litigation objectives stated in court proceedings to obtain a legal decision." (*Ibid.*) Simply put, the Code of Civil Procedure section 998 offers and settlement negotiations here

_____

necessary conclusion from the record, and one not reached by the trial court.

16

were irrelevant to the determination of whether Waterwood was a prevailing party under section 1717.

We are cognizant that certain circumstances may permit an attorney fee award under Code of Civil Procedure section 998 even when a party was not the prevailing party under section 1717. (*SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 577–578 (*SCI*).) "[A] defendant's entitlement to costs under section 998 derives not from its status as a prevailing party but rather from the plaintiff's failure to accept a reasonable settlement offer." (*SCI*, at p. 578.) Under Code of Civil Procedure section 998, "a party whose settlement offer exceeds the judgment 'is treated for purposes of postoffer costs *as if* it were the prevailing party.' " (*SCI*, at p. 578.) Where a contract permits the prevailing party attorney fees, such postoffer costs may also include attorney fees. (*Ibid*.) These principles do not assist the City because the City's Code of Civil Procedure section 998 offer, offering $40,001, did not exceed the judgment of $45,050. (See Code Civ. Proc., § 998, subd. (c)(1).)

### 3. The trial court did not consider the controlling legal standard

A trial court abuses its discretion when it applies the wrong legal standard. (*Miyamoto v. Department of Motor Vehicles* (2009) 176 Cal.App.4th 1210, 1219.) Even if the City admitted that it owed Waterwood money to repair the parking lot, and assuming arguendo the jury based its damage award on repairing the parking lot, the trial court abused its discretion in relying on that purported admission to conclude the City was a prevailing party. To achieve prevailing party status under this theory, section 1717, subdivision (b)(2) required the City to admit its debt

17

and tender the debt before a contested trial.  The City never did so.

Section 1717, subdivision (b)(2) provides in pertinent part: "Where the defendant alleges in his or her answer that he or she tendered to the plaintiff the full amount to which he or she was entitled, and thereupon deposits in court for the plaintiff, the amount so tendered, and the allegation is found to be true, then the defendant is deemed to be a party prevailing on the contract within the meaning of this section."

Contemporaneously with section 1717, subdivision (b)(2)'s enactment, the Senate Committee on the Judiciary described its purpose as follows:  "Proponents perceive another deficiency in present C.C. [Civil Code] Sec. 1717 in that it does not contain a provision allowing the defendant to be deemed the prevailing party when she or he tenders the plaintiff the full amount to which the defendant alleges that the plaintiff is entitled, deposits that amount in court, and then establishes the allegation as true. Such a provision, which is aimed at encouraging settlements, is contained in present C.C. Sec. 1811.1, whose language SB 1028 would incorporate into C.C. Sec. 1717."  (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1028 (1981–1982 Reg. Sess.) as introduced Mar. 27, 1981, p. 3.)

As the legislative history reveals, section 1717, subdivision (b)(2) was modeled after section 1811.1, and we may presume the Legislature was aware of contemporaneous judicial construction of section 1811.1.  (*People v. Jones* (2001) 25 Cal.4th 98, 109; see also *Viking Pools, Inc. v. Maloney* (1989) 48 Cal.3d 602, 609 ["The Legislature is deemed to be aware of existing laws and judicial decisions construing the same statute in effect at the time legislation is enacted . . . ."].)

18

Section 1811.1 provides (and provided at the time the Legislature enacted the pertinent part of § 1717, subd. (b)(2)): "Reasonable attorney's fees and costs shall be awarded to the prevailing party in any action on a contract or installment account subject to the provisions of this chapter[4] regardless of whether such action is instituted by the seller, holder or buyer. Where the defendant alleges in his answer that he tendered to the plaintiff the full amount to which he was entitled, and thereupon deposits in court, for the plaintiff, the amount so tendered, and the allegation is found to be true, then the defendant is deemed to be a prevailing party within the meaning of this article."

In *Joseph Magnin Co. v. Schmidt* (1978) 89 Cal.App.3d. Supp. 7 (*Schmidt*), the court applied section 1811.1 to determine the plaintiff was the prevailing party. (*Id.* at p. Supp. 11.) In *Schmidt*, the defendant paid the amount it owed the plaintiff a month after the plaintiff sued the defendant, but before the defendant answered. (*Id.* at p. Supp. 8.) The judgment awarded the plaintiff no damages because the defendant had already paid the obligation. (*Id.* at pp. Supp. 8–9.) The plaintiff argued that notwithstanding that fact, it was the prevailing party for purposes of an award of attorney fees because the defendant did not pay the amount owed until after the plaintiff filed the complaint. (*Id.* at p. Supp. 9.)

The *Schmidt* court agreed: Under section 1811.1, "[s]uccessful plaintiffs are entitled to costs and disbursements as a matter of course. [Citation.] Attorneys fees are likewise

---

4 Section 1811.1 appears in a chapter regarding retail installment contracts.

19

available in the absence of agreement where specifically provided for by statute as here. [Citation.] Hence [plaintiff] herein, by specific statutory authorization, upon the date of filing of its complaint, was in the same position as any other similarly authorized plaintiff-creditor who is owed a debt and who incurs attorneys fees and costs in seeking payment of that debt. The clear import of section 1811.1 is to encourage prelitigation tenders. Tender is a word in common legal usage to denote an offer before suit. The use of the word 'tender' in the same sentence in which the phrase '. . . deposits in court . . .' appears also supports our conclusion that tenders in section 1811.1 are to be made before the litigation commences. Logically then if the prelitigation tender is refused the defendant may after suit allege such tender and deposit the amount to which plaintiff is entitled into court." (*Schmidt, supra*, 89 Cal.App.3d at p. Supp. 11.) The court further concluded that "neither law, equity, fairness nor justice requires that a defendant debtor be entitled to delay payment of a debt in circumstances such as these until after a lawsuit has been filed and thus defeat a plaintiff-creditor's entitlement to attorneys fees and costs." (*Id.* at p. Supp. 13.)

In *Schmidt,* the plaintiff was a prevailing party because the defendant did not timely tender the amount it owed the plaintiff. Here, the City never tendered any debt owed Waterwood relating to the lease. The trial court overlooked the import of section 1717, subdivision (b)(2), and as we explain below, the trial court thus abused its discretion in finding that the City was the prevailing party.

20

### 4. Under the correct legal standard, the City was not a prevailing party

Although the City argues that "from the very beginning [it] admitted breach, as it had not completed all the repairs," an "admitted breach" is not the same as a tender. (Underscoring omitted.) "A tender is an offer of performance made with the intent to extinguish the obligation." (*Still v. Plaza Marina Commercial Corp.* (1971) 21 Cal.App.3d 378, 385; see also *Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 783.) When properly made, a tender puts the other party in default if he or she refuses to accept it. (*Still, supra*, at p. 385.)

Applying section 1717, subdivision (b)(2), we have explained that a defendant is a prevailing party when the defendant tenders the full amount of the contractual debt or pays the entire debt. (*David S. Karton, A Law Corp. v. Dougherty* (2014) 231 Cal.App.4th 600, 608 [defendant was the prevailing party under section 1717, subdivision (b)(2) because prior to plaintiff's commencement of arbitration, he paid plaintiff the attorney fees and interest he owed].) Division Three of our court recognized in *Bank of Idaho v. Pine Avenue Associates* (1982) 137 Cal.App.3d 5, 16, that under section 1717, subdivision (b)(2), a defendant could be a prevailing party "if in the answer a tender is alleged, a deposit is made, and the plaintiff is found to be entitled to no more than the amount of the tender," but concluded it was premature to make a prevailing party finding there before the defendant answered. Because the City did not tender to Waterwood any amount for repair, its "admitted breach" does not support prevailing party status.

21

Here, there was only one contract claim, and Waterwood was the only party that obtained relief. The jury found against the City on the sole cause of action for breach of contract and rejected all its affirmative defenses. The City failed to tender any admitted cost of repair to Waterwood at any time before or during the trial of this case. Thus the record does not reveal any circumstance under which the City could be the prevailing party under section 1717.

The City counters with *de la Cuesta v. Benham* (2011) 193 Cal.App.4th 1287 (*de la Cuesta*), but to no avail. There, the plaintiff-landlord filed an unlawful detainer complaint seeking unpaid rent and other damages. (*Id.* at pp. 1290–1291.) The defendant-tenant answered alleging she owed nothing and that the landlord had breached the warranty of habitability. (*Id.* at p. 1291.) After the tenant vacated the premises, the court converted the case from an unlawful detainer to an ordinary civil action. (*Id.* at p. 1291.) Ultimately the landlord recovered approximately 70 percent of the monetary damages he had requested. (*Ibid.*) The trial court denied the landlord's motion for attorney fees and found neither party prevailed because the landlord recovered possession before the civil action commenced and recovered only a portion of its damages. (*Ibid.*)

Applying section 1717, the appellate court distinguished a case in which a plaintiff obtains an unqualified victory and all the damages it sought, from a case in which a plaintiff recovers only a portion of the damages sought. (*de la Cuesta, supra*, 193 Cal.App.4th at pp. 1292–1293.) The appellate court explained that in the latter scenario, a trial court cannot simply "nullify" an attorney fee "provision if there is anything less than 100 percent success as measured against the most extreme claim

22

for relief taken by a litigant . . . ."**5** (*de la Cuesta*, at p. 1295.) The court then concluded that, given the "lopsidedness" of the award and that the landlord had obtained repossession of the premises, the trial court abused its discretion in finding there was no prevailing party and in not awarding attorney fees to the landlord. (*Id*. at pp. 1297, 1299.)

We fail to discern how this case supports the trial court's finding that the City was the prevailing party here.

## D. Instructions on Remand

Upon remand the trial court shall determine whether Waterwood was the prevailing party or whether there was no prevailing party. As discussed earlier, when "deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." (*Hsu*, *supra*, 9 Cal.4th at p. 876; *de la Cuesta, supra*, 193 Cal.App.4th at p. 1296.) The trial court may not consider the parties' settlement discussions. (*Marina Pacifica, supra*, 20 Cal.App.5th at p. 204.)

---

**5** "Most of the time, attorneys have an incentive to assert the maximal claims possible on behalf of their clients. . . . But if anything less than complete victory means that a client loses what would otherwise have been 'prevailing party' status under section 1717, the attorney is crunched into a dilemma. Risk a malpractice suit by *not* asserting maximal claims, or risk a malpractice suit by forfeiting 'prevailing party' status under section 1717 *by* asserting maximal claims." (*de la Cuesta, supra*, 193 Cal.App.4th at p. 1296, fn. 5.)

23

If the trial court concludes that Waterwood is the prevailing party, it shall calculate the amount of reasonable fees the City owes Waterwood under Article XXXV. If the trial court finds there was no prevailing party, neither party is entitled to its attorney fees.

## DISPOSITION

The amended judgment is reversed in so far as it requires Waterwood Enterprises, LLC to pay the City of Long Beach's attorney fees. In all other respects the amended judgment is affirmed. The case is remanded to the trial court for further proceedings consistent with this opinion. Waterwood Enterprises, LLC is entitled to its costs on appeal.

CERTIFIED FOR PUBLICATION.


BENDIX, J.

We concur:


ROTHSCHILD, P. J.


FEDERMAN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

24