Filed 7/16/25  Life Care Residences v. Affordable Senior Housing Foundation CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LIFE CARE RESIDENCES, INC., et al., | D084316 |
| Plaintiffs, Cross-defendants, and Appellants, | (Super. Ct. No. 37-2018-00058858-CU-BC-NC) |
| v. | |
| AFFORDABLE SENIOR HOUSING FOUNDATION, | |
| Defendant, Cross-complainant, and Respondent. | |


APPEAL from an order of the Superior Court of San Diego County, Kevin A. Enright, Judge.  Affirmed.

Fitzgerald Knaier, Kenneth M. Fitzgerald and Keith M. Cochran, for Plaintiffs, Cross-defendants, and Appellants.

Pettit Kohn Ingrassia Lutz & Dolin, Douglas A. Pettit and Matthew C. Smith, for Defendant, Cross-complainant, and Respondent.

Life Care Residences, Inc. (LCR), Affordable Housing Initiatives, Inc. (AHI), and John and Firouzeh Gamble, individually and as trustees of the Gamble Family Trust (collectively, Appellants), appeal a postjudgment order for attorney fees and costs, which was granted in part and denied in part. Appellants contend the trial court abused its discretion in (1) determining that Appellants were not the prevailing party under a purchase agreement and (2) apportioning their attorney fees under an escrow holdback agreement after the trial court found Appellants were the prevailing parties under that contract. Additionally, Appellants maintain the court erred in declining to award them their attorney fees incurred in successfully defending against certain tort claims alleged in the cross-complaint. We are not persuaded by Appellants' arguments and affirm the trial court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

Oak Hill Residential Care (Oak Hill) is a 99-bed assisted living facility located in Escondido, California. It serves a clientele without substantial economic means by fixing residents' rates for life.

In 2017, Affordable Senior Housing Foundation (ASHF) entered into an agreement with Appellants to purchase Oak Hill's assets, including its real property, for $18.54 million (Purchase Agreement).

On November 13, 2017, prior to escrow closing on ASHF's purchase of Oak Hill, ASHF entered into an escrow holdback agreement (Escrow Holdback Agreement) with Appellants and the escrow agent. Under that agreement, Appellants deposited $500,000 into an escrow account for a period of up to one year during which ASHF waited for its licenses to operate Oak Hill, to act as security for Appellants' obligation to indemnify ASHF for claims arising from Appellants' prior operation of Oak Hill before the sale, and to protect against losses incurred because of any breach of Appellants'

2

representations and warranties. In addition, under the Escrow Holdback Agreement, ASHF was required to release the $500,000 at the close of the one-year escrow period or ASHF's receipt of its licenses, whichever came first, unless ASHF made a written claim against Appellants before that time.

Escrow on the purchase of Oak Hill closed on November 16, 2017. Because ASHF did not yet have the required licenses, Appellants agreed to continue operating Oak Hill under AHI's licenses until ASHF received its own. To facilitate that understanding, AHI and ASHF entered into a lease agreement and a management agreement for the continued operation of Oak Hill. Under the lease agreement, ASHF leased all Oak Hill property to AHI, giving sole and exclusive possession of the facilities to AHI. Under the management agreement, ASHF agreed to serve as AHI's manager of Oak Hill for all nondelegable duties. ASHF agreed to be "solely responsible for all day-to-day operations of the Facilities including, but not limited to, employing, training, and supervising all personnel and operating the Facilities in accordance with RCFE [Residential Care Facility for the Elderly] laws and regulations and performing all of [AHI's] and [ASHF's] standard practices."

In February 2018, while Appellants were still operating Oak Hill under AHI's license, the California Department of Industrial Relations (DIR) investigated potential labor violations at Oak Hill, which both AHI and ASHF disputed. ASHF's attorney handled the investigation and, on March 21, 2018, sent the DIR a letter denying any labor law violations and asserting that all applicable labor laws and regulations had been complied with, including during the time Appellants owned and operated the facility. ASHF eventually made changes to its employment practices, and the DIR closed its investigation without issuing a citation or other disciplinary action.

3

On July 23, 2018, ASHF received its licenses to operate Oak Hill. Upon receiving those licenses, the lease and management agreements terminated, and AHI turned over control of Oak Hill's operations to ASHF. On July 26, 2018, Appellants requested the release of the $500,000 held in escrow. ASHF, however, refused to release the funds, claiming it was withholding the money because of pending litigation.

On November 21, 2018, LCR sued ASHF to compel the release of the $500,000 escrow holdback funds. LCR asserted five related claims under the Escrow Holdback Agreement for: (1) breach of written contract; (2) breach of the covenant of good faith and fair dealing; (3) specific performance; (4) declaratory relief; and (5) fraud in the inducement. LCR sought damages, punitive damages, specific performance, declaratory relief, prejudgment interest, costs, and attorney fees relating to ASHF's improper withholding of the escrow funds.

A little over two months later, ASHF filed a cross-complaint against Appellants, which it later amended. In the operative cross-complaint, ASHF asserted five causes of action for: (1) breach of the Purchase Agreement; (2) fraud; (3) negligent misrepresentation; (4) declaratory relief; and (5) indemnity. Specifically, ASHF averred that Appellants committed fraud and breached the representations and warranties in the Purchase Agreement by using a false rent roll to misrepresent Oak Hill's occupancy and by warranting that Oak Hill was following applicable labor and employment laws.

In July 2019, a group of Oak Hill employees filed a Private Attorneys General Act (PAGA) and wage and hour lawsuit against ASHF and Appellants based on Oak Hill's employment practices both before and after the close of escrow. Appellants requested indemnification from ASHF under

4

the Purchase Agreement, lease agreement, and management agreement. However, ASHF refused to indemnify Appellants or provide a defense. Ultimately, Appellants paid a $368,032.08 settlement to the various plaintiffs and incurred $424,606.63 in attorney fees and costs defending the PAGA litigation.

On February 20, 2020, Appellants filed a cross-complaint against ASHF, which it amended twice. In the second amended cross-complaint, Appellants asserted seven causes of action: (1) breach of the Purchase Agreement; (2) breach of the Escrow Holdback Agreement; (3) indemnity; (4) specific performance under the Purchase Agreement; (5) specific performance under the Escrow Holdback Agreement; (6) declaratory relief; and (7) fraud under the lease and management agreements. Among other things, Appellants sought damages based on ASHF's failure to indemnify them in the PAGA litigation as allegedly required under the Purchase Agreement.

On February 2, 2022, LCR moved for summary adjudication on its claim for breach of the Escrow Holdback Agreement, which ASHF opposed. On June 10, 2022, the trial court granted LCR's motion for summary adjudication, finding ASHF failed to make a written claim for damages within the applicable period as required under the Escrow Holdback Agreement.[1] The trial court therefore ordered ASHF to release the $500,000 escrow holdback funds to LCR.

---

[1] The Escrow Holdback Agreement required ASHF to make any claims against the escrow funds "within the period that end[s] on the earlier of (i) one (1) year of the Closing Date, or (ii) the date that Buyer obtains its residential care facility for the elderly licensure." As stated, ASHF received its licenses to operate the facility on July 23, 2018. By agreement it had until 11:59 p.m. that evening to make a claim against the funds held back. But ASHF made its claim five days later, on July 28, 2018.

Twenty days later, the escrow funds were released, which totaled $494,000 after the escrow agent's deduction of four years of escrow fees. Although the parties attempted to resolve the open issues regarding the escrow holdback funds (e.g., interest, attorney fees, and costs), they were unable to come to a resolution. The parties deferred that issue to the trial.

Trial began on November 6, 2023 and lasted 14 court days over a four-week period. LCR proceeded with two claims against ASHF: (1) false promise regarding the Escrow Holdback Agreement and (2) breach of the Escrow Holdback Agreement. AHI tried a single claim for breach of the lease agreement with ASHF. Appellants also attempted to prove that ASHF breached the Purchase Agreement.

ASHF, on the other hand, litigated its affirmative claims of intentional misrepresentation, negligent misrepresentation, concealment, and breach of the Purchase Agreement.

At the conclusion of trial, the jury found that ASHF breached the Escrow Holdback Agreement and awarded LCR damages in the amount of $202,575.34. The jury did not award damages on any other claim against ASHF. Regarding ASHF's claims, the jury found that Appellants did not breach the Purchase Agreement and did not make any false representation or fail to disclose any fact. Also, the jury did not award LCR any punitive damages.

Appellants subsequently moved to recover attorney fees under Civil Code[2] sections 1717 and 3287,[3] arguing that they were entitled to fees as prevailing parties under both the Purchase Agreement and Escrow Holdback

---

[2] Statutory references are to the Civil Code unless otherwise specified.

[3] Section 3287 addresses interest relating to damages. It does not factor into our analysis here. Accordingly, we do not further discuss it.

Agreement. The Purchase Agreement contained the following attorney fees clause:

> "Attorneys' Fees. If either Party hereto institutes any proceeding, claim or action, at law or in equity, in connection with or arising out of the terms, conditions, covenants and agreements contained in this Agreement, the nonprevailing Party in any such action, claim or proceeding shall reimburse the prevailing Party for reasonable attorneys' fees, expert fees, court costs and other expenses incurred in connection with such proceeding or action."

Appellants argued that the attorney fees provision in the Purchase Agreement was broad enough to encompass tort actions arising out of the contract. Thus, they maintained that they were the prevailing party under the Purchase Agreement (per section 1717) and entitled to fees and costs incurred in successfully defending against ASHF's tort claims.

Appellants made a similar argument that they were entitled to all their fees and costs under the Escrow Holdback Agreement. That agreement provided "in the event any action be instituted by a party to enforce this Agreement, or in the event of any litigation, claim or action whatsoever concerning the subject matter of this Agreement, the prevailing party in such action (as determined by the court, agency or other authority before which such suit or proceeding is commenced), shall be entitled to such reasonable attorneys' fees, costs and expenses as may be fixed by the decision maker."

In all, Appellants maintained they were entitled to $2,525,206.50 in attorney fees, $30,414.05 in prejudgment interest, $40,201.50 in expert witness fees, and $117,091.78 in costs, for a total of $2,712,913.83.

In its opposition, ASHF asserted, among other arguments, that no party prevailed at trial. ASHF observed that LCR did not succeed on its false promise claim related to the Escrow Holdback Agreement, and the jury

7

rejected Appellants' affirmative claims under the Purchase Agreement. At most, ASHF maintained that the trial court should award LCR $49,387.50—the attorney fees associated with LCR's successful motion for summary adjudication.

In reply, Appellants argued they were the undisputed prevailing party under the Escrow Holdback Agreement because they received damages plus interest. Regarding the Purchase Agreement, Appellants maintained they were the prevailing party because they achieved their litigation objectives by defeating ASHF's claims under the Purchase Agreement, which included three tort claims.

The trial court heard oral argument on Appellants' demand for fees and costs. The court considered the Appellants' motion, ASHF's opposition, the reply, and the evidence offered in support of and against the motion. The trial court found that no party prevailed under the Purchase Agreement. In reaching this conclusion, the court explained that none of the parties obtained any affirmative relief under the Purchase Agreement. Regarding Appellants, the court noted that, "[b]ased on the pleadings, trial briefs, and testimony and arguments presented at trial," Appellants' litigation objective was to enforce ASHF's legal obligation to indemnify Appellants against third party claims. And Appellants failed to achieve this goal. Implicit in the court's findings was a rejection of Appellants' claim that their primary litigation objective under the Purchase Agreement was to defeat ASHF's tort claims.

The trial court also rejected Appellants' argument that they were the prevailing parties under the Purchase Agreement because they had the greater comparative litigation success as they faced more risk and defeated ASHF's larger claims for damages. The court analogized the instant action to

8

*Cussler v. Crusader Entertainment, LLC* (2012) 212 Cal.App.4th 356 (*Cussler*), determining that, like the defendant in *Cussler*, Appellants were not the prevailing parties.

However, the trial court found that Appellants were the prevailing party under the Escrow Holdback Agreement. The court further determined that the attorney fee provision in the Escrow Holdback Agreement was broad enough to include non-contract claims. The court also concluded that the fees Appellants were seeking should be apportioned by when Appellants incurred the fees. As the court explained:

> "Based on the evidence and arguments presented, and considering the litigation history of this action, the Court finds apportionment is warranted to make a reasonable fee award. The Court finds a proper allocation includes an award of attorneys' fees incurred up through June 10, 2022, the date the Honorable Blaine K. Bowman granted [Appellants'] motion for summary adjudication. [Citation.] The Court finds such an apportionment recognizes [Appellants'] success on the [Escrow] Holdback Agreement, as [Appellants'] summary judgment motion enabled Appellants to achieve a main litigation objective and left prejudgment interest on the withheld funds and escrow fees as the remaining issues for [Appellants'] claims on the [Escrow] Holdback Agreement. This apportionment also recognizes that based on the record, [Appellants'] offers to stipulate to the interest owed on the escrow holdback funds, and the Court's observations of trial, that a great deal of the litigation efforts after [Appellants'] summary adjudication motion (including the claims raised at trial) were directed towards claims unrelated to the [Escrow] Holdback Agreement that neither party prevailed on."

Accordingly, the trial court awarded Appellants a total of $722,530.01 in attorney fees, consisting of the fees incurred to the point the court granted summary adjudication on the breach of contract and specific performance claims under the Escrow Holdback Agreement as well as the fees incurred to

bring the motion for attorney fees following trial.  In addition, the court awarded Appellants $68,507.79 in costs and $2,775 in prejudgment interest.

Appellants timely filed a notice of appeal.

DISCUSSION

A.      *Appellants' Contentions*

Except as provided for by statute, compensation for attorney fees is left to the agreement of the parties.  (Code Civ. Proc., § 1021.)  Section 1717 provides that reasonable attorney fees authorized by contract shall be awarded to the prevailing party as "fixed by the court."  Here, it is undisputed that the superior court awarded fees under section 1717 because the fees were authorized by the Escrow Holdback Agreement.  Moreover, in moving for attorney fees, Appellants sought fees as the prevailing party under section 1717 both for the Escrow Holdback Agreement and the Purchase Agreement.  However, the court found that there was no prevailing party under the Purchase Agreement.  This left any fee and cost award available only under the Escrow Holdback Agreement.[4]

In the instant action, Appellants focus on two primary issues.  First, they argue that the trial court abused its discretion in determining that Appellants were not the prevailing party under the Purchase Agreement.  Within that argument, Appellants maintain the trial court erred in not awarding them fees for successfully defending against ASHF's tort claims arising out of the Purchase Agreement.  Next, Appellants claim the court abused its discretion in apportioning their requested fees as prevailing party

---

[4]      "When an action involves multiple, independent contracts, each of which provides for attorney fees, the prevailing party for purposes of Civil Code section 1717 must be determined as to each contract regardless of who prevails in the overall action."  (*Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 491.)

10

under the Escrow Holdback Agreement.  We address these arguments in turn.

B.      *The Purchase Agreement*

Section 1717, subdivision (a) states in pertinent part:  "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."  The trial court "shall determine who is the party prevailing on the contract for purposes of this section," which is "the party who recovered a greater relief in the action on the contract."  (*Id.*, subd. (b)(1).)  "The court may also determine that there is no party prevailing on the contract for purposes of this section."  (*Ibid.*)

The trial court exercises wide discretion in determining who, if anyone, is the prevailing party for purposes of attorney fees.  (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 (*Hsu*); *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894.)  We review the trial court's ruling that there was no prevailing party for an abuse of discretion.  (*Waterwood Enterprises, LLC v. City of Long Beach* (2020) 58 Cal.App.5th 955, 966.)  Such an abuse occurs only when the trial court acts in an " ' " 'arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' "  (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 615-616.)  Although the trial court retains considerable discretion, where one party achieves a "simple, unqualified" win, it would abuse that discretion if it did not conclude that party was the prevailing party.  (*Deane Gardenhome Assn. v. Denktas* (1993)

11

13 Cal.App.4th 1394, 1398.)  Only where "the ostensibly prevailing party receives only a part of the relief sought" or "the judgment is ' "considered good news and bad news as to each of the parties," ' " is it appropriate for the court to determine neither party prevailed.  (*Ibid.*)  The trial court is governed by any language in the contract defining "prevailing party," so long as it does not run counter to the statute, and if there is none, "a court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation objectives, whether by judgment, settlement, or otherwise." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 622 (*Santisas*).)

In this case, the Purchase Agreement states:  "If either Party hereto institutes any proceeding, claim or action, at law or in equity, in connection with or arising out of the terms, conditions, covenants and agreements contained in this Agreement, the nonprevailing Party in any such action, claim or proceeding shall reimburse the prevailing Party for reasonable attorneys' fees, expert fees, court costs and other expenses incurred in connection with such proceeding or action."  We observe the contract itself does not offer any definition of which party would be considered prevailing. Accordingly, the situation required the trial court to approach this question pragmatically, determining "the extent to which each party . . . realized its litigation objectives." (*Santisas, supra*, 17 Cal.4th at p. 622; see § 1717, subd. (b)(1).)

As discussed *ante*, the trial court determined no party prevailed under the Purchase Agreement.  " '[T]ypically, a determination of no prevailing party results when both parties seek relief, but neither prevails, or when the ostensibly prevailing party receives only a part of the relief sought.' " (*Hsu, supra*, 9 Cal.4th at p. 875.)  "[I]n determining *litigation success*, courts should respect substance rather than form, and to this extent should be guided by

12

'equitable considerations.' For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective." (*Id.* at p. 877, italics altered.)

Below, the trial court determined that neither ASHF nor Appellants obtained any affirmative relief under the Purchase Agreement. Regarding Appellants' claims, the trial court found, based on the pleadings, trial briefs, testimony, and arguments presented at trial (see *Hsu, supra*, 9 Cal.4th at p. 876), that Appellants' litigation objective under the Purchase Agreement was to enforce ASHF's legal obligation to indemnify Appellants against third party claims. Specifically, the court noted that Appellants' cross-complaint sought breach of contract and indemnity claims arising out of the Purchase Agreement related to ASHF's failure to indemnify Appellants for a portion of the fees they incurred in defending the PAGA litigation. Moreover, the court observed that Appellants sought to introduce evidence and argument at trial that they were entitled to indemnification from ASHF for 30 percent of the attorney fees awarded to the plaintiffs in the PAGA litigation. Because the jury did not award damages to Appellants for the indemnity claims, the trial court concluded that Appellants did not achieve their litigation objective under the Purchase Agreement.

Appellants do not dispute that they did not obtain any affirmative relief under the Purchase Agreement. Nonetheless, they argue that the trial court abused its discretion in determining that Appellants were not the prevailing parties under the Purchase Agreement because the court did not consider their success in defeating ASHF's tort claims related to that contract. However, the trial court's order belies Appellants' claim. The court explicitly noted that Appellants successfully defended against ASHF's claims in which

13

it sought $2.778 million in damages from Appellants. The trial court determined that Appellants' argument was like the one rejected by the appellate court in *Cussler, supra*, 212 Cal.App.4th 356. In that case, the defendant argued that it was the prevailing party under the applicable contract because it defeated the plaintiff's claim for $8.5 million. (*Id.* at p. 366.) Yet, the appellate court disagreed. Affirming the trial court's decision to find no prevailing party, the *Cussler* court explained:

> "Crusader never sought to recover $8.5 million in damages from Cussler as a result of a breach of the contract. Rather, it sought to prevent Cussler from recovering $8.5 million in damages. Thus, Crusader was successful on its *defense* against an $8.5 million claim. But the same is true with respect to Cussler's defense against Crusader's numerous breach of contract claims. In the end, neither party obtained any *affirmative* relief." (*Ibid.*)

Here, the trial court explained that, like the defendant in *Cussler*, Appellants successfully defended *against* a claim for damages but, also like the defendant in *Cussler*, failed to achieve any affirmative relief *for* the claims they brought under the Purchase Agreement. Relying on *Cussler*, the trial court determined the Appellants were not the prevailing party under the Purchase Agreement.

Appellants fail to explain why *Cussler* is not analogous here. Indeed, Appellants do not even mention *Cussler* in their appellate briefing. Rather, Appellants contend that *de la Cuesta v. Benham* (2011) 193 Cal.App.4th 1287 (*de la Cuesta*) and *Silver Creek, LLC v. BlackRock Realty Advisors, Inc.* (2009) 173 Cal.App.4th 1533 (*Silver Creek*) are instructive. We disagree.

In *de la Cuesta*, the plaintiff-landlord filed an unlawful detainer complaint seeking unpaid rent and other damages. (*de la Cuesta, supra*, 193 Cal.App.4th at pp. 1290-1291.) The defendant-tenant answered alleging she owed nothing and that the landlord had breached the warranty of

habitability. (*Id.* at p. 1290.) After the tenant vacated the premises, the court converted the case from an unlawful detainer to an ordinary civil action. (*Id.* at p. 1291.) Ultimately, the landlord recovered about 70 percent of his requested monetary damages. (*Ibid.*) The trial court denied the landlord's motion for attorney fees and found neither party prevailed because the landlord recovered possession before the civil action commenced and recovered only a portion of his damages. (*Ibid.*)

Applying section 1717, the appellate court distinguished a case in which a plaintiff obtained an unqualified victory and all the damages it sought from a case in which a plaintiff recovers only a portion of the damages sought. (*de la Cuesta, supra*, 193 Cal.App.4th at pp. 1292-1293.) The appellate court explained that in the latter scenario, a trial court cannot simply "nullify" an attorney fee "provision if there is anything less than 100 percent success as measured against the most extreme claim for relief taken by a litigant . . . ." (*Id.* at p. 1295.) The court then concluded that, given the "lopsidedness" of the award and that the landlord had obtained repossession of the premises, the trial court abused its discretion in finding there was no prevailing party and in not awarding attorney fees to the landlord. (*Id.* at pp. 1297, 1299.)

We find *de la Cuesta* inapposite to the issue before us because, unlike the landlord in *de la Cuesta*, Appellants did not recover any monetary damages under the Purchase Agreement. As such, Appellants' victory at trial is unlike the landlord obtaining affirmative relief under his claims in *de la Cuesta*.

Similarly, we find that *Silver Creek, supra*, 173 Cal.App.4th 1533 is unhelpful to Appellants' position here. In that case, BlackRock Realty Advisors attempted to purchase commercial properties from Silver Creek and

executed multiple agreements to that effect. (*Id.* at p. 1536.) A dispute regarding the terms later led Silver Creek to inform BlackRock that it was terminating the transaction. (*Ibid.*) After BlackRock did not acknowledge Silver Creek's notification, Silver Creek filed an action seeking a declaration that the termination of the agreements was valid, and that Silver Creek was entitled to retain BlackRock's deposit. (*Ibid.*) BlackRock cross-complained, alleging that "Silver Creek had breached its obligation to act reasonably in approving a loan release and thus its purported termination of the agreements was invalid." (*Ibid.*) The trial court granted Silver Creek's declaratory action and denied BlackRock's cross-claims but returned to BlackRock its deposit. (*Id.* at p. 1537.) Silver Creek moved for attorney fees under section 1717. (*Silver Creek,* at p. 1537.) The trial court denied this motion, reasoning that because both parties obtained some form of relief, neither attained an " 'unqualified victory.' " (*Id.* at p. 1538.)

This court reversed the trial court's order in part. We determined that even though the trial court had correctly recognized that Silver Creek had achieved its main litigation objective, it ignored this factor in conducting its prevailing party analysis. (*Silver Creek, supra*, 173 Cal.App.4th at p. 1540.) We concluded that because Silver Creek had achieved its "main litigation objective," it was the prevailing party for purposes of attorney fees. (*Ibid.*)

Here, by contrast, neither Appellants nor ASHF succeeded in their respective affirmative claims. Nonetheless, Appellants contend they achieved their main litigation objectives: "[O]btaining (then retaining) the $500,000 escrow holdback, recovering a damage award for interest and escrow fee deductions on that amount, and successfully defeating [ASHF's] $2.778 million damages claim." The first two litigation objectives related solely to the Escrow Holdback Agreement. Accordingly, they play no role in the

16

determination of whether Appellants should be considered the prevailing party under the Purchase Agreement.

The last litigation objective relates to the Purchase Agreement. The trial court explicitly found that Appellants' primary litigation goal under the Purchase Agreement was to compel ASHF to indemnify Appellants for third party claims. The trial court made that determination after considering the pleadings, trial briefs, testimony, and arguments presented at trial. (See *Hsu, supra*, 9 Cal.4th at p. 876.) Appellants do not offer any support for their position that the court abused its discretion in determining Appellants' primary objective in the Purchase Agreement litigation was to recover on their indemnity claims.

Appellants' position is unpersuasive. Their view is that even though no one recovered any damages in connection with the Purchase Agreement, because ASHF sought to recover exponentially more in damages than Appellants for their respective claims ($2.778 million versus $359,884.41), Appellants should be viewed as having achieved greater relief than ASHF. This is misguided. "[T]here is more to section 1717 than a merely mechanical determination." (*Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1154.) The prevailing party determination turns on which party achieves "greater relief," which implicates equitable considerations, not just monetary recovery. (§ 1717, subd. (b); *Hsu, supra*, 9 Cal.4th at p. 876; *Sears*, at p. 1151 [term "greater relief" includes " '[s]uperior in quality' "].) And, further, these considerations are left to the trial court's "broad equitable discretion." (*Jackson v. Homeowners Assn. Monte Vista Estates-East* (2001) 93 Cal.App.4th 773, 788.) The trial court here was "in the best position to determine the degree to which either party succeeded at trial." (See *Olive v. General Nutrition Centers, Inc.* (2018) 30 Cal.App.5th 804, 829, fn. 15.) It

17

carefully considered the issues and followed applicable case law.  On the record before us, we cannot conclude that the trial court abused its discretion in determining that there was no prevailing party under the Purchase Agreement.

Although we conclude that the trial court did not abuse its discretion in finding there was no prevailing party under the Purchase Agreement, we briefly address two additional arguments that Appellants appear to raise for the first time on appeal.  Appellants claim they were entitled to their attorney fees under the Purchase Agreement for successfully defending tort claims arising out of it even if there was no prevailing party on the contract claims.  Appellants urge us to follow *Adam v. DeCharon* (1995) 31 Cal.App.4th 708 (*Adam*) and *Lerner v. Ward* (1993) 13 Cal.App.4th 155 (*Lerner*).  However, Appellants did not cite to either case in their motion for attorney fees below.

In *Adam*, the trial court determined that the defendant was the prevailing party under section 1717 because she had successfully defeated the plaintiffs' breach of contract claim.  (*Adam, supra*, 31 Cal.App.4th at p. 711.)  The appellate court concluded the trial court's finding was in error because the plaintiffs recovered tort damages against the defendant, and the subject attorney fees clause was broad enough to cover both contract and tort causes of action.  (*Id.* at pp. 712-714.)  However, the appellate court determined that the plaintiffs failed on their breach of contract cause of action; so, they were *not* the prevailing parties under section 1717.  (*Adam*, at p. 712.)  Nonetheless, the court found that the plaintiffs could seek their attorney fees under Code of Civil Procedure section 1021.[5]  (*Adam*, at p. 712.)

---

[5]    Code of Civil Procedure section 1021 provides:  "Except as attorney's fees are specifically provided for by statute, the measure and mode of

18

Similarly in *Lerner*, the appellate court determined that the defendants were entitled to their attorney fees in successfully defeating the plaintiffs' tort claims that were covered under an attorney fees clause in the subject contract. (*Lerner, supra,* 13 Cal.App.4th at p. 160.) In reaching this conclusion, the appellate court noted that the defendants were not entitled to their fees under section 1717 because the plaintiffs had dismissed their breach of contract claim before trial. (*Lerner*, at p. 160.) However, the court found that the defendants were entitled to their fees under Code of Civil Procedure section 1021, which they specifically asked for in their motion for attorney fees in the trial court. (*Lerner*, at pp. 159-161.)

Thus, both *Adam* and *Lerner* address the theory that a party may be entitled to its attorney fees in connection with a tort action under a broadly worded attorney fees provision pursuant to Code of Civil Procedure section 1021. However, Appellants did not argue below that they were entitled to attorney fees under Code of Civil Procedure section 1021. Indeed, they did not even cite to that statute in their motion. At most, in the reply in support of their motion for attorney fees, Appellants noted that ASHF had conceded that Appellants prevailed on the tort claims, and thus, they were entitled to their attorney fees for those claims.

Because Appellants did not claim they were entitled to attorney fees under Code of Civil Procedure section 1021 in their motion for attorney fees below, we conclude that they have forfeited that argument on appeal. (See *Bitner v. Department of Corrections & Rehabilitation* (2023) 87 Cal.App.5th 1048, 1065 (*Bitner*) ["Having failed to raise or develop this issue in the trial

---

compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided."

court, plaintiffs cannot raise the issue for the first time on appeal"].) Although we have discretion to consider purely legal issues raised on appeal (*Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697, 1709), we are more likely to do so when such issues result from a change in the law (*GreenLake Capital, LLC v. Bingo Investments, LLC* (2010) 185 Cal.App.4th 731, 739, fn. 6). No such change occurred here. It would be unfair to both the trial court that presided over the lengthy trial of this matter and carefully considered the motion for attorney fees and voluminous billing records, and ASHF, which did not have the opportunity to respond to any argument made under Code of Civil Procedure section 1021, to find error on an issue that Appellants did not raise below.[6]

C.      *The Escrow Holdback Agreement*

The trial court found that Appellants were the prevailing party under the Escrow Holdback Agreement. Further, the court concluded that the attorney fees provision in that contract was broad enough to cover non-contract causes of action. Yet, in awarding Appellants attorney fees, the court apportioned the requested fees. Appellants maintain the court erred in doing so. The issue before us is whether the court abused its discretion in awarding Appellants only some fees.

---

[6]      Similarly, for the first time on appeal, Appellants claim they are entitled to their attorney fees under Code of Civil Procedure sections 1032 and 1033.5, subdivision (a)(10)(A). Having failed to make that argument below, we find that Appellants have forfeited it here. (*Bitner, supra*, 87 Cal.App.5th at p. 1065.) We note that Appellants did claim certain litigation costs under Code of Civil Procedure sections 1032 and 1033.5 in a footnote in their motion for attorney fees. However, they did not maintain they were entitled to their attorney fees under those statutes. Nor did they offer any explanation regarding why they were entitled to those costs under those two statutes beyond merely citing to them.

"The amount of an attorney fee to be awarded is a matter within the sound discretion of the trial court."  (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134 (*Akins*).)  "[W]e will not disturb that determination unless we are convinced that it is clearly wrong."  (*Ibid.*, citing *Serrano v. Priest* (1977) 20 Cal.3d 25, 49.)  A trial court abuses its discretion when its ruling exceeds the bounds of reason taking into consideration all circumstances before it.  (*Erickson v. R.E.M. Concepts, Inc.* (2005) 126 Cal.App.4th 1073, 1083 (*Erickson*).)  A ruling that constitutes an abuse of discretion is " 'so irrational or arbitrary that no reasonable person could agree with it.' "  (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon*).)  "The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination."  (*Akins*, at p. 1134.)

To determine the amount of reasonable attorney fees to award to a prevailing party under section 1717, a trial court must begin with the "lodestar," or the number of hours reasonably expended multiplied by the reasonable hourly rate.  (*PLCM Group, Inc. v. Dexler* (2000) 22 Cal.4th 1084, 1095.)  " 'California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.' [Citation.]"  (*Ibid.*)

After a court determines the appropriate lodestar amount, it maintains discretion to apportion the amount of fees to be awarded the prevailing party.  One type of apportionment involves allocating attorney fees when causes of action for which attorney fees are provided by statute are joined by causes of action for which attorney fees are not permitted.  In such cases, "the prevailing party may recover only on the statutory cause of action."  (*Akins,*

21

*supra*, 79 Cal.App.4th at p. 1133.) For example, in *Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672 (*Bell*), the plaintiff sued the school district for failure to comply with the Brown Act and for tort damages. (*Id.* at p. 680.) The plaintiff was entitled to statutory attorney fees only for the Brown Act violations, which comprised four of the 15 causes of action. (*Ibid.*) Neither party in the action attempted to apportion fees, and block-billing statements made it nearly impossible to break down hours on a task-by-task basis between the two sets of claims, so a panel of our court concluded that "the trial court should exercise its discretion in assigning a reasonable percentage to the entries, or simply cast them aside." (*Id.* at p. 689.)

However, "the joinder of causes of action should not dilute the right to attorney fees. Such fees need not be apportioned when incurred for representation of an issue common to both a cause of action for which fees are permitted and one for which they are not. All expenses incurred on the common issues qualify for an award." (*Akins, supra*, 79 Cal.App.4th at p. 1133.) Thus, "[a]pportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units." (*Bell, supra*, 82 Cal.App.4th at p. 687.)

Yet, even when the claims for relief are intertwined, the court must still determine the amount of attorney fees reasonable considering the relative degree of success in obtaining results. (*Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 247 (*Sokolow*).) Thus, a second type of apportionment occurs when courts allocate attorney fees to a prevailing party based on the significance of the party's success. (See *Ramos v. Garcia* (2016) 248 Cal.App.4th 778, 791.)

When a plaintiff is a prevailing party because he or she has succeeded on only some claims for relief, courts conduct a two-part analysis: First, did the plaintiff fail to prevail on claims unrelated to those on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended considering the level of success? (*Harman v. City and County of San Francisco* (2006) 136 Cal.App.4th 1279, 1307-1308, citing *Hensley v. Eckerhart* (1983) 461 U.S. 424, 434 (*Hensley*).)

" 'If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. . . . [T]he most critical factor is the degree of success obtained.' " (*Sokolow, supra*, 213 Cal.App.3d at p. 247, quoting *Hensley, supra*, 461 U.S. at pp. 436-437.) "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." (*Hensley*, at p. 440.) There is no precise rule or formula for making this determination. (*Sokolow*, at p. 248.) A trial court may identify specific hours to eliminate or it may reduce the award overall to account for the limited amount of success. (*Ibid.*)

Here, the trial court determined the appropriate lodestar-based fee was $2,516,106.50. It reached this amount by subtracting $7,700 in requested fees attributable to a particular attorney's billing on the instant matter as well as subtracting an additional $1,400 that was attributable to a different matter.[7] Appellants do not take issue with the trial court's calculation of the lodestar.

---

[7]    Appellants conceded that $2,527.50 of their requested fees were attributable to a separate matter and reduced their requested fees by that

The court then concluded it was appropriate to apportion the attorney fees. The court determined that the proper allocation of fees was to award Appellants the entirety of their requested fees incurred through the date of their successful motion for summary adjudication (June 10, 2022). In awarding all the fees incurred up until that date, the court did not allocate between various causes of action. In other words, the court did not limit the fees as to only the prosecution of Appellants' successful breach of contract/specific performance claim regarding the Escrow Holdback Agreement. Instead, the court awarded Appellants *all* the fees they had incurred to that point. In doing so, the court explained that it considered: (1) Appellants achieved their main litigation objective in obtaining the escrow holdback funds; (2) the remaining claims at trial related to the Escrow Holdback Agreement consisted of prejudgment interest and escrow fees; (3) Appellants' offers to stipulate to the interest owed on the escrow holdback funds; and (4) the observation at trial "that a great deal of the litigation efforts after [Appellants'] summary adjudication motion (including the claims raised at trial) were directed towards claims unrelated to the [Escrow] Holdback Agreement that neither party prevailed on." The court then awarded Appellants $663,292.51 in attorney fees incurred up until June 10, 2022, and an additional $59,237.50 in fees for the attorney fees motion, for a total amount of $722,530.01.

Appellants raise two primary challenges to the trial court's apportionment of attorney fees. First, they argue that they recovered all they requested under the Escrow Holdback Agreement; thus, the court had no basis to deny them the fees they incurred in proving their entitlement to

amount. The trial court found the actual figure to be $3,927.50, resulting in an additional reduction of $1,400.

interest at trial. However, this argument assumes Appellants were entitled to all the fees they had incurred until the time the court granted the motion for summary adjudication. That is not correct.

The trial court found that Appellants were the prevailing party under the Escrow Holdback Agreement. To this end, the court concluded that Appellants achieved their primary litigation objective—to obtain the escrow holdback fees plus interest on those fees. And while the court determined that the attorney fees provision in the Escrow Holdback Agreement was broad enough to cover non-contract claims, Appellants were not successful as to any other claims involving the Escrow Holdback Agreement. Indeed, the jury found that Appellants had not proven that ASHF made a false promise in entering into the Escrow Holdback Agreement. Moreover, Appellants were not successful in proving any of their causes of action related to the Purchase Agreement or the lease agreement between AHI and ASHF. Further, the trial court determined that, as described in section 1717, no one was the prevailing party under the Purchase Agreement; therefore, no one was entitled to any attorney fees under that contract.

Appellants do not assert that all the attorney fees they incurred up until the court granted its motion for summary adjudication related only to its breach of the Escrow Holdback Agreement claim. Thus, the trial court could have apportioned the fees up until that point, awarding attorney fees to Appellants only for the fees involving their one successful affirmative claim through trial. But the court did not do so. Rather, noting Appellants' lack of success on other claims and the amount of time spent at trial on claims unrelated to the breach of the Escrow Holdback Agreement, the court decided to apportion Appellants' attorney fees based upon the point at which they achieved their primary success, and in doing so, awarded attorney fees to

25

Appellants for legal fees unrelated to their successful affirmative claim. Indeed, the lion's share of what Appellants recovered under the Escrow Holdback Agreement occurred at the point the trial court granted their motion for summary adjudication. And Appellants' success at trial was mixed. Thus, the court was well within its discretion to apportion the attorney fees as it did. (See *Sokolow, supra*, 213 Cal.App.3d at p. 248.)

Next, Appellants present us with an "Appendix re Trial Proceedings" wherein they attribute time spent on pretrial and trial issues related to their claims for indemnification under the Purchase Agreement versus all other claims. This argument is not helpful to Appellants' position. It assumes that the trial court abused its discretion in finding that Appellants were not the prevailing party under the Purchase Agreement. As we discussed *ante*, the trial court did not abuse its discretion in making that determination. Also, Appellants misunderstand our role in undertaking an abuse of discretion review. We do not replace the trial court's judgment with our own. We do not weigh or reconsider the evidence presented to the trial court to apply a mathematical formula to determine what and how much evidence was dedicated to a specific issue. (See *Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1420.) The trial court is in a much better position than we are to consider the evidence and make the appropriate conclusions related to the value of the professional services provided. (*Akins, supra*, 79 Cal.App.4th at p. 1134.)

Here, the trial court reduced the total amount of the attorney fees awarded to Appellants due to their limited success. It was well within the court's discretion to do so. (*Sokolow, supra*, 213 Cal.App.3d at p. 248). We cannot say the amount awarded is so small under the circumstances that it shocks the conscience (see *Erickson, supra*, 126 Cal.App.4th at p. 1083; *Akins,*

26

*supra*, 79 Cal.App.4th at p. 1134); nor do we conclude that no reasonable person could agree with it (*Sargon, supra*, 55 Cal.4th at p. 773).  Appellants, therefore, have not shown that the trial court abused its discretion in apportioning the attorney fees it awarded.

DISPOSITION

The order is affirmed.  ASHF is entitled to its costs on appeal.


RUBIN, J.

WE CONCUR:

McCONNELL, P. J.

BUCHANAN, J.